703 A.2d 680

MAUREEN E. KAMAN, PLAINTIFF–APPELLANT, AND DIRECTOR, DIVISION OF TAXATION, INTERVENOR–APPELLANT, v. MONTAGUE TOWNSHIP COMMITTEE, MAYOR RICHARD DICKSON, DEPUTY MAYOR WILLIAM CAMPANA, COMMITTEEMEN PATRICK SMITH, PAUL BRISLIN, AND LEROY VANDERMARK AND BEN MURDOCK, TAX ASSESSOR, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 20, 1997—Decided December 17, 1997.

Before Judges PETRELLA, SKILLMAN and EICHEN.

*Maurice J. Donovan* argued the cause for appellant Maureen E. Kaman (*Benjamin M. Del Vento,* attorney; *Mr. Donovan,* of counsel and on the brief).

*Patrick DeAlmeida,* Deputy Attorney General, argued the cause for appellant Director, Division of Taxation (*Peter Verniero,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. DeAlmeida,* on the brief).

*John D. Frederickson* argued the cause for respondents (*Carmel & Frederickson,* attorneys; *Mr. Frederickson,* on the brief).

*John R. Lloyd* argued the cause for amicus curiae The Association of Municipal Assessors of New Jersey (*Rosenblum Wolf & Lloyd,* attorneys; *Mr. Lloyd,* on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The issue on appeal involves the interpretation and application of *N.J.S.A.* 40A:9–148 to the appointment and filling of vacancies for the position of municipal tax assessor. Plaintiff Maureen Kaman appeals from an order of the Law Division dismissing her complaint with prejudice and denying her requested restraints against defendant Township of Montague (Township) and various township officials named as defendants (defendants), for terminating her as tax assessor.

The issues on appeal are whether: (1) Kaman should be considered to have been appointed tax assessor for a four year term from July 1994 until June 1998 because of the inaction of the Township in July 1994 in reappointing a new tax assessor; (2) the Director of the Division of Taxation (Director) has the sole authority to remove a tax assessor from office; (3) Kaman is entitled to back pay pursuant to *N.J.S.A.* 40A:9–172; and, (4) the court erred in dismissing the complaint's CEPA [1] allegation.

The background facts are necessary to understand the arguments of the parties. On March 24, 1981, the Township appointed Donald DeKorte as tax assessor "through the end of 1981." DeKorte served until his resignation on May 8, 1990. On June 12, 1990, Ed Nowicki was appointed tax assessor for a term ending June 30, 1994. However, Nowicki resigned in March, 1991, and Lowery McMillan was appointed as tax assessor. McMillan resigned in May 1992.

On July 31, 1992, the Township Committee appointed Kaman to replace McMillan, but the resolution stated that the appointment was "for the next four (4) years." Kaman functioned as tax assessor from July 1992 through March 1996 without incident. She asserts that the mayor and clerk advised her in late March 1996 that her appointment as tax assessor had been discussed at a

---

[1] Conscientious Employee Protection Act, *N.J.S.A.* 34:19–1 *et seq.*

meeting and she would be formally appointed to another four year term starting July 1, 1996.

On May 15, 1996, Kaman wrote a memorandum to the clerk describing an incident involving the clerk, planning board secretary and a resident of the town and instructed her secretary not to take messages for another secretary. Kaman contends that as a result of her memorandum, she was labeled a troublemaker and that this incident led directly to defendants' actions in removing her as the tax assessor.

Kaman wrote to the Township Committee on May 23, 1996, expressing her interest in being reappointed. On May 29, 1996, the Township Committee notified Kaman that they would be advertising the position. She interviewed for the position on June 20, 1996, and then apparently for the first time indicated to the Township that she believed her term expired on June 30, 1998 (four years after the date McMillan's term ended), rather than ending June 30, 1996, in accordance with the Township's original appointment.

On June 27, 1996, Kaman received a letter from the Township Committee notifying her that the governing body had decided not to reappoint her, and instead appointed Ben Murdoch as tax assessor.

Kaman now takes the position, as she did in the Law Division, that she was appointed to finish McMillan's term (which actually was Nowicki's four year term) ending on June 30, 1994. Kaman contends that because she continued in her duties as the tax assessor on and after July 1, 1994 and into 1996, she should be considered as having been appointed to a four year term on July 1, 1994, and running to June 30, 1998.

The trial judge found that after July 1994 the Township did nothing because it was under the mistaken belief that Kaman's term did not end until June 30, 1996. The judge concluded that Kaman continued in office in a "holdover" status and was not entitled to an automatic four year term by reason of her holding

over. The judge reasoned that a governing body has a right to decide whether to reappoint a person after her term has expired and did not lose that right because it made an honest mistake in calculating the term of office. The judge acknowledged that in some situations such a holdover position could encourage political deal making and wrongdoing. However, he found no evidence of wrongdoing in not realizing Kaman's term should have expired or that the Township purposefully held over Kaman or deliberately failed to act in June 1994. In fact, the judge indicated that when the issue of Kaman's term arose in 1996 the Township dealt with it expeditiously. Hence, the judge denied relief to Kaman.

I.

The parties now agree that by virtue of *N.J.S.A.* 40A:9–148 Kaman's initial appointment should have been, and must be construed as one to fill out the remainder of the preceding tax assessor's term, which expired in June 1994. However, Kaman argues that the Township's inaction in June 1994 and for the following two years constituted an appointment for a four year term ending June 30, 1998. Kaman, the Director, and *amicus* argue that since she remained in office and fulfilled her duties as tax assessor continuously from June 1994 through June 1996, the Township's failure to realize its mistake in calculating the term should not permit it to consider her merely a "holdover" tax assessor and allow the Township to terminate (on June 30, 1996) her "new" four year appointment, which they allege started July 1, 1994, under something akin to a ratification theory.

In addition, Kaman, the Director, and *amicus* argue that the Legislature does not permit holdover tax assessors because that status would subject the tax assessor position to undue influence and political pressure. Kaman argues that only the Director of the Division of Taxation has authority to remove a tax assessor from office. Finally, Kaman claims entitlement to back pay and

that the lower court dismissed her complaint without any consideration given to her CEPA allegation.[2]

The Township and individual defendants argue that after June 1994, and during the period they thought Kaman was serving the four year term, Kaman should be considered a holdover tax assessor, remaining in office pending replacement. They assert that if Kaman is now permitted to remain in office until June 30, 1998, because of an oversight by the governing body in not realizing she was actually appointed to an unexpired term ending June 30, 1994, the will of the duly elected representatives in the Township would be thwarted. Defendants argue that it is illogical to conclude that the Township ratified Kaman's position as the tax assessor for a new four year term beginning June 1994 through its inaction when it erroneously believed the initial appointment of Kaman terminated in 1996. Finally, defendants argue that the Law Division judge properly dismissed Kaman's CEPA claim.

## II.

*N.J.S.A.* 40A:9–148 states:

Every municipal tax assessor and deputy assessor shall hold his office for a term of 4 years from the first day of July next following his appointment.

Vacancies other than due to expiration of term shall be filled by appointment for the unexpired term.

*N.J.S.A.* 40A:9–148 requires fixed terms. *See Ream v. Kuhlman,* 112 *N.J.Super.* 175, 190, 270 *A.*2d 712 (App.Div.1970) (municipality cannot establish a term longer or shorter for a tax assessor

---

[2] The Director has intervened in this appeal in support of Kaman. The Director notes the need for tax assessors to remain free from political influence in fulfilling their responsibilities. In addition, the Director indicates that once appointed, the assessor's functions and activities are within his jurisdiction (although the municipality must pay the assessor's salary and benefits), and asserts that public policy disfavors a municipality "holding over" a tax assessor because it transforms the position into an at will position. The tax assessor position is considered somewhat of a hybrid. *Mitchell v. City of Somers Point,* 281 *N.J.Super.* 492, 499, 658 *A.*2d 1276 (App.Div.1994). Tax assessors are appointed and paid by municipalities, but function as state officers under the direction of the Director.

because although his jurisdiction is local, his powers are prescribed by the Legislature and he is an "integral part" of the state, county and municipal governments); *Township of Madison v. Fiore*, 112 *N.J.Super.* 23, 26, 270 *A.*2d 293 (App.Div.1970), *certif. denied*, 57 *N.J.* 595, 274 *A.*2d 50 (1971) (when the Legislature adopted *N.J.S.A.* 40:46–6.2 [now 40A:9–148] it intended that all assessors in all municipalities have four year terms). Tax assessors must be free from political pressure. *See Ream v. Kuhlman, supra*, 112 *N.J.Super.* at 190, 270 *A.*2d 712 (stating that "it is of paramount importance that the integrity of [the tax assessor's] office be in no way diluted by local interference").

The clear language of the statute required that Kaman's initial appointment in July 1992 should have been to fill the remaining two years left in the unexpired term of Kaman's predecessor, despite the Township's then belief that the term would be four years from the time of appointment. The issue here is how do we treat the *de facto* occupant of the tax assessor's position where that has occurred by mutual mistake and there has been no attempt to subvert the statute.

Kaman, the Director and *amicus* in effect argue for a bright line test to bar any holdover status and require that service in the position of tax assessor after the end of a term (whether or not the municipality mistakenly and honestly believes the term ends on a different date) results in an automatic appointment or implied ratification of a new four year term. This position is untenable and capable of working as much mischief as sought to be avoided by the intent of *N.J.S.A.* 40A:9–148. The parties acknowledged at oral argument the difficulty in drawing a line at one day. For instance, it would not be just to mandate a new term where an assessor worked one or two days after a term ending June 30, before the municipality was made aware of its error. What if it were a matter of weeks or months?

Here, it appears from the record that when June 30, 1994 arrived there was a mutual expectation that Kaman's term had at least two years to run. The Township did not intentionally try to

hold Kaman over as assessor after June 30, 1994. Indeed, it does not appear that the Township had any inkling in 1994 or through mid–1996 that it had erred until Kaman's interview in June 1996 concerning the appointment for what was thought to be a term to begin July 1, 1996. Neither the municipality nor Kaman had apparently realized that there was any problem. It is an insufficient answer to say the municipality should have known or been charged with knowledge of the law. For that matter, so should the incumbent Kaman. *See Graves v. Church & Dwight Co., Inc.,* 115 *N.J.* 256, 275, 558 *A.*2d 463 (1989) (Clifford, J., dissenting); *Matter of N.J. State Board of Dentistry,* 84 *N.J.* 582, 588, 423 *A.*2d 640 (1980); *State v. De Meo,* 20 *N.J.* 1, 9, 118 *A.*2d 1 (1955); and *State v. Western Union Tel. Co.,* 12 *N.J.* 468, 493, 97 *A.*2d 480 (1953), *appeal dismissed,* 346 *U.S.* 869, 74 *S.Ct.* 124, 98 *L.Ed.* 379 (1953). *See also* 2 Sutherland, *Statutory Construction,* § 41.02 at 247 (4th ed.1973).

Since no action was taken to either remove or reappoint Kaman or appoint a new assessor in or before July 1994, Kaman was the occupant of the tax assessor office until June 1996 as *de facto* tax assessor. In June 1996, the Township, believing her four year term for the original appointment in 1992 had expired, appointed a new tax assessor. In retrospect, in July 1992, Kaman could only have been appointed to the position of tax assessor for the remainder of her predecessor's term ending June 1994. *See Newman v. Borough of Fair Lawn,* 31 *N.J.* 279, 286–289, 157 *A.*2d 314 (1960) (appointment valid for full legal term notwithstanding appointing body's attempt to give different term).

In *Casamasino v. City of Jersey City,* 304 *N.J.Super.* 226, 699 *A.*2d 697 (App.Div.1997), plaintiff was appointed as tax assessor by the mayor to fill his predecessor's unexpired term, plus a full four year term beginning July 1, 1987. However, the city counsel did not confirm the appointment as required by law. When his four year term of appointment "expired" on June 30, 1991, he continued to serve as tax assessor and was paid, although not formally reappointed. In June 1993, a new mayor notified plaintiff that he

was not being reappointed. *Id.* at 231–232, 699 *A.*2d 697. He sued seeking reinstatement and claimed tenure rights under *N.J.S.A.* 54:1–35.31.[3]

The trial judge in *Casamasino* concluded the city council's failure to ratify plaintiff's *initial* appointment was not fatal, and that his removal was void because the council "impliedly ratified"[4] the appointment. *Id.* at 233, 699 *A.*2d 697. *Casamasino* is distinguishable because there the action taken by the governing body was knowing and deliberate, while in this case it was the product of a mutual, honest mistake.

Neither *N.J.S.A.* 40A:9–148 nor any other statute relating to tax assessors provides for holdover status. Nor does any statute indicate that a tax assessor who remains in office past the expiration date of his term should be entitled to a full four year term. If there is no holdover status for a tax assessor, the alternative would appear to be that the term of office ends definitively and irrevocably upon expiration of the term, absent reappointment. *Cf. DeVesa v. Dorsey*, 134 *N.J.* 420, 634 *A.*2d 493 (1993). In such case a person occupying that office purporting to act as tax assessor does so either *de facto* or illegally. The appellants seek to have the occupant of an office without an appointment for that period metamorphosized into a "reappointment," almost as a penalty for the Township's failure to comply with the statute or as

---

[3] That statute provides that a tax assessor who has served four consecutive years after an initial appointment shall be entitled to tenure upon reappointment. Kaman now concedes that a holding that she is entitled to remain the tax assessor through 1998 would not entitle her to tenure. *N.J.S.A.* 54:1–35.31 requires that a tax assessor obtains tenure *upon reappointment* after serving four consecutive years. Kaman has not qualified under the statute.

[4] *See also Johnson v. Hospital Service Plan of N.J.*, 25 *N.J.* 134, 140–141, 135 *A.*2d 483 (1957) (doctrine of implied ratification applies to municipalities as well as individuals; a city may be bound by inaction or silence); *Ratajczak v. Board of Education of Perth Amboy*, 114 *N.J.L.* 577, 581, 177 *A.* 880 (N.J.Sup.Ct.1935) *aff'd* 116 *N.J.L.* 162, 183 *A.* 214 (E. & A.1936) (a local school board had impliedly ratified the employment of a janitor because it continued to pay him and the janitor continued to perform his duties).

a fictional or implied ratification. Neither of these alternatives produces a desirable or logical result.

The Township erred, but neither Kaman nor the Director ever inquired into the proper length of Kaman's term before this dispute arose. In addition, no party or anyone else ever suggested that in June 1994 Kaman had to be replaced or given a full four year term. Thus, it is clear that there was no knowing or deliberate intent by the Township to create a holdover situation. The Township merely made an honest mistake in calculating the term. In the future we consider it incumbent upon appointees to the tax assessor position and holders of that position, not just the municipality, to inquire as to the history of their predecessor's appointment and their own term of office, particularly where the appointment does not run for four years from July 1. The Division should also have a mechanism to monitor such appointment terms if it seeks to enforce the statutory scheme. Nonetheless, the governing body's right to appoint a tax assessor should not be lost because of an honest mistake as to the actual end of the tax assessor's term.

We reject Kaman's argument that the Township's failure to act in July, 1994, for whatever reason, impliedly ratified her position as the tax assessor for a term ending June 1998. Although *N.J.S.A.* 40A:9–148 does not permit "hold overs" and only allows appointments for four year terms, it also does not award full four year terms to tax assessors merely because of a mistake or inadvertence in the appointment process. The public has an interest in not allowing municipalities to "holdover" tax assessors because such actions could impermissibly convert the tax assessor position to an "at will" position, subject to political whims. *See Casamasino, supra*, 304 *N.J.Super.* at 234, 699 *A.*2d 697. The statute does not permit this. However, no such actions are evident here.

We hold under the circumstances of this case that the Township made an honest mistake and did not forfeit its right to appoint a tax assessor.

## III.

■ Finally, Kaman objects to the dismissal of her Conscientious Employee Protection Act (*N.J.S.A.* 34:19–1, *et seq.*) claim. She alleged in her verified complaint that:

14. The termination of Plaintiff, Maureen E. Kaman, as tax assessor for the Township of Montague is politically motivated and is in retaliation against the Plaintiff, and contrary to CEPA.

The trial judge did not specifically address the CEPA allegation in his opinion, but did state that there was no evidence of "anything inappropriately political about any effort to remove Ms. Kaman." Kaman claims that her dismissal was the result of her memo which instructed her secretary not to take messages for another secretary.

*N.J.S.A.* 34:19–3 states in pertinent part:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, rule or regulation promulgated pursuant to law by the employer ...

We have substantial doubts as to whether Kaman is an "employee" of the Township and thus whether CEPA even applies here, particularly in light of the assertions by appellants that only the Director can remove a tax assessor from office. *See Mitchell v. City of Somers Point,* 281 *N.J.Super.* 492, 499–500, 658 *A.2d* 1276 (App.Div.1994). However, the issue has not been briefed and thus, we assume for purposes of this opinion that CEPA applies.

Kaman did not allege that she was dismissed because she had disclosed or threatened to disclose the Township's action in not complying with *N.J.S.A.* 40:9–148. Her brief describes the incident as a political fiasco involving numerous municipal people. However, Kaman's own affidavit suggests that the disagreement was simply whether her secretary was to take messages for another secretary. The record indicates no illegality of the type

contemplated by CEPA or even a reasonable inference of such. *See Abbamont v. Piscataway Tp. Bd. Educ.*, 138 *N.J.* 405, 417, 650 A.2d 958 (1994).

Nothing in the record supports a claim that defendants terminated Kaman as an improper retaliatory response to some incident covered by CEPA. In light of our determination we need not address other issues, such as potential entitlement to back pay or the scope of the Director's authority to remove an assessor from office.

Affirmed.