720 A.2d 369 (1998)
316 N.J. Super. 271
LITTLE EGG HARBOR TOWNSHIP, Plaintiff-Respondent,
v.
Charles BONSANGUE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1998.
Decided November 9, 1998.
*371 Peter J. Zipp, Jamesburg, for defendant-appellant (Peter J. Zipp, attorney; Mr. Zipp and Lawrence L. McIver, of counsel and on the brief).
Stephen K. Foran, Toms River, for plaintiff-respondent (Gilmore and Monahan, attorneys; Charles W. Hutchinson, of counsel, Christine M. Faustini, on the brief).
Before Judges PETRELLA, D'ANNUNZIO and COLLESTER.
*370 The opinion of the court was delivered by PETRELLA, P.J.A.D.
Charles Bonsangue appeals from the judgment of the Tax Court which increased the Ocean County Board of Taxation's (County Board) valuation of certain real property in the Township of Little Egg Harbor (Township). On appeal, Bonsangue argues that the Tax Court Judge erred: (1) in permitting the tax assessor to testify as an expert witness; (2) in using and referring to an appraisal never put into evidence; and, (3) in that there was insufficient evidence to support the judge's findings and that the Township did not overcome the presumption of validity of the County Board's judgment.
Bonsangue owns two vacant and contiguous[1] parcels of property in the Township known as lot 15.02 and lot 15.03 in block 325.200. Both parcels are irregularly shaped. Lot 15.02 consists of 2.12 acres and has a total of 671 feet of frontage on two streets. Lot 15.03 consists of 2.98 acres and has a total of 865 feet of frontage. Both parcels are in the general business zone, which allows a broad variety of commercial uses, and are accessible to public water and sewer. Lot 15.02 is adjacent to a 4,000 square foot strip mall. Lot 15.03 is also adjacent to that strip mall as well as to a 12,000 square foot strip mall.
In 1996, lot 15.02 was assessed by the Township at $296,800 and lot 15.03 was assessed at $298,000.
Bonsangue filed a tax appeal of the 1996 assessment[2] with the County Board. After a hearing, the County Board reduced the assessment for lot 15.02 to $70,000 and the assessment for lot 15.03 to $76,000. Thereafter, the Township filed an appeal by way of complaint in the Tax Court, challenging the County Board's reduction of the assessments on Bonsangue's properties.
At the trial in the Tax Court, each party presented only one witness, each represented to be an expert witness. Pursuant to R. 8:6-1(b), both parties submitted appraisals. The Township submitted an appraisal report by Joseph T. Sorrentino, the Township's tax assessor. Bonsangue submitted an appraisal by Paul Johnson. Each expert used the sales comparison valuation approach. However, Sorrentino used the price per front foot as a measure of value, whereas Johnson used the price per acre as a measure of value.
After hearing the testimony of both witnesses, the Tax Court Judge adopted the testimony and valuation methodology of the Township's expert. Even though the judge eliminated three of the seven comparable properties relied upon by the Township's expert, he considered the remaining four sufficiently reliable to be probative of the true value of the properties. The judge completely rejected the testimony of Johnson, referring to Johnson's testimony and valuation methodology as "useless" and "not helpful."
*372 Consequently, on May 16, 1997, the Tax Court entered judgment declaring the true value of lot 15.02 was $255,000, and the true value of lot 15.03 was $205,000.

I.
Bonsangue argues that the Township's expert witness, the tax assessor, is barred from giving expert testimony before the Tax Court, because he is neither licensed nor certified pursuant to the Real Estate Appraisers Act, N.J.S.A. 45:14F-21(c).[3] After a review of the relevant statute and its legislative intent, we agree with the Tax Court Judge that no such bar exists as applied to the facts of this case.
The qualification and competency of a witness to provide expert testimony are matters within the sound discretion of the trial court. Carey v. Lovett, 132 N.J. 44, 64, 622 A.2d 1279 (1993); Adamson v. Chiovaro, 308 N.J.Super. 70, 77, 705 A.2d 402 (App.Div. 1998); Grand View Gardens v. Borough of Hasbrouck Heights, 14 N.J.Super. 167, 170-171, 81 A.2d 510 (App.Div.1951). An appellate court does not interfere with the exercise of the trial judge's discretion regarding the admission or exclusion of expert or opinion testimony unless there is a clear abuse of discretion. Carey v. Lovett, supra (132 N.J. at 64, 622 A.2d 1279); Spiegle v. Seaman, 160 N.J.Super. 471, 478, 390 A.2d 639 (App. Div.1978); Grand View Gardens v. Borough of Hasbrouck Heights, supra (14 N.J.Super. at 170-171, 81 A.2d 510).
The qualifications of a municipal tax assessor[4] are specifically regulated by statute. N.J.S.A. 54:1-35.25. In this case, the tax assessor met these qualifications and has served as a certified tax assessor in the Township since 1980. Based on the record, there was no error in the Tax Court Judge accepting the testimony of the tax assessor as an expert in support of the Township's appeal.

II.
Next, the property owner asserts that it was reversible error for the Tax Court Judge to keep and use a copy of the tax assessor's appraisal (captioned as a "Valuation Analysis")[5] as trial notes and refer to it during the tax assessor's testimony because the appraisal was not formally introduced into evidence. The "Appraisal Reports" of Johnson, the property owner's appraisal expert, were moved into evidence on the property owner's case. Bonsangue further contends that the use of the tax assessor's valuation analysis may have prejudiced or influenced the judge's decision. These arguments are without merit.
Both parties submitted "appraisals" to the court and exchanged the same in accordance with case management procedures of the Tax Court and R. 8:6-1(b). Bonsangue was apprised of the contents of the Township's valuation *373 analysis or "appraisal" before the start of trial, and had ample opportunity to prepare and conduct a meaningful cross-examination of the tax assessor.
Moreover, the Tax Court Judge had asked both parties if he could use the submitted appraisals on which to make trial notes prior to the testimony of each expert witness. There was no objection. During the trial, the tax assessor sufficiently testified as to the contents of his appraisal report so that all relevant material was in the record as his testimony. He was subject to a vigorous cross-examination by the property owner's attorney. There were no objections to that testimony or to the judge using the appraisals to follow the testimony. No one asked to have the appraisal introduced into evidence and there was no application to strike the testimony at the end of the case because the appraisal was not in evidence.
The Township argues that the use of the appraisals by the judge served only to highlight properly admitted evidence as similarly used in Boland v. Dolan, 140 N.J. 174, 657 A.2d 1189 (1995). The issue in Boland was whether the jury's use of a magnifying glass to examine a properly admitted photograph constituted new or additional evidence. The Boland court did not consider the magnifying glass as new evidence and that "[t]he magnifying glass only highlighted or illustrated evidence properly admitted or testimony of witnesses properly allowed during the trial, and plaintiff had adequate time to rebut negative inferences." Id. at 187-188, 657 A.2d 1189.
Aside from the consent to such use, there was no surprise or prejudice. The property owner's attorney had ample opportunity to cross-examine the tax assessor, even using his appraisal. At most, any error would have been harmless.
There is nothing to support the property owner's assertion that the judge's findings and the use of the appraisals for trial notes were improperly linked. The judge merely used the appraisals as an aid in following the testimony of the experts. There was nothing inappropriate in the judge's use of the appraisals under the circumstances. The judge's findings were supported by the record and within the recognized bounds of fairness and due process in light of the testimony heard at trial. The judge made findings of fact and conclusions of law as required by R. 1:7-4. He clearly stated his factful findings and correlated them with the relevant legal conclusions. Curtis v. Finneran, 83 N.J. 563, 570, 417 A.2d 15 (1980). Any error in the use of the appraisals as trial notes was harmless.

III.
Next, Bonsangue argues that the Township's valuation expert relied on two unconsummated contracts of sale to establish value and the judge erred in using these sales contracts in the calculation of value. Bonsangue contends that no place in the record is there any evidence of a thorough review of the provisions of either contract and the record is devoid of any evidence of the circumstance surrounding the execution of either contract of sale.
Guidance as to the admissibility of unconsummated contracts is provided in Linwood Properties, Inc. v. Borough of Fort Lee, 7 N.J.Tax 320, 333 (Tax Ct.1985):
In relying on unconsummated contracts of sale in the valuation of real property two very basic and established principles must be emphasized. First, no such contract may be taken on its face without a thorough review of its provisions and the circumstances surrounding its execution. Second, when such inquiry reveals that it is replete with contingencies and is in fact nothing more than an offer or option to purchase, the contract must be disregarded and given no probative effect.
Even with this proviso, objections to the validity of executory contracts affect the weight of the evidence rather than its admissibility.
The weight, if any, to be attributed to such contracts depends on many factors not the least important of which is its contingent or noncontingent nature. If an agreement is so replete with contingencies which thereby seriously detract from the likelihood that it will be consummated, the less *374 supportable is an opinion that it reflects a freely bargained price between a willing buyer and a willing seller.

[Linwood Properties, Inc. v. Borough of Fort Lee, supra (7 N.J.Tax at 331-332). See also United States v. Certain Parcels of Land in City of Philadelphia, 144 F.2d 626, 630 (3d Cir.1944).]
The use of unconsummated contracts for valuation purposes is recognized in New Jersey. "[I]n the absence of a completed sale, evidence of the price agreed upon in a binding contract of sale for property between the owner and a purchaser, both acting in good faith, would be of substantial significance in arriving at the fair market value of such property." City of East Orange v. Crawford, 78 N.J.Super. 239, 244, 188 A.2d 219 (Law Div.1963). Moreover, unlike an offer and option, contracts for the purchase of land are binding obligations, not lightly ignored. The fact that the contracts have not progressed into sales goes to the weight of the evidence rather than to its sufficiency.
The fact that a contract is unconsummated does not ipso facto render the contract inadmissible to establish a property's fair market value. If a litigant establishes evidence to support a finding of a "reasonable probability" or "likelihood" that the contingencies would be fulfilled, then the contract's relevance and admissibility would be established. See, e.g., Linwood Properties, Inc. v. Borough of Fort Lee, supra (7 N.J.Tax at 331-332); Hoechst Celanese Corp. v. Bridgewater Township, 12 N.J.Tax 532, 539 (Tax 1992) (indicating that for tax assessment purposes, State v. Gorga, 26 N.J. 113, 138 A.2d 833 (1958), requires that a zoning change or variance must be probable rather than merely possible before such evidence is admissible).
Whether a contingent contract stands a reasonable probability of becoming non-contingent, and thus probative of the property's value, bears upon the relevance of the proposed evidence, and is properly decided by the trial judge. Bonsangue argues that the two contracts were not the subject of a searching inquiry by the judge and thus should be disregarded. In the present matter, through the testimony of the Township's expert, two comparable "sales" were pending contracts of sale. The tax assessor indicated that one of these comparables was a pending contract since June 1995, later renewed to January 1997, at a price of $150,000. The tax assessor also testified that sale of a second property was pending at a price of $140,000. According to testimony adduced at trial the same, unnamed, person contracted for the purchase of these properties for the construction of a future shopping center.
In addition, the assessor testified that there was an application pending before the planning board for the approval of this future shopping center which included these pending contracts of sale. Based on the testimony, the tax judge could well conclude that the contracts were more than mere offers or options for sale. Nonetheless, even disregarding the contracts of sale, there were two comparable sales remaining.
Bonsangue argues that of the remaining comparable sales used by the Tax Court Judge, only one survives scrutiny of being sufficiently credible to overcome the presumption of correctness of the County Board's judgment. Even if we were to recognize only one of the comparable sales, the evidence presented before the Tax Court on that one comparable sale withstands scrutiny.
Bonsangue relies on Phillips v. Hamilton Tp., 15 N.J.Tax 222, 227 (App.Div.1995) (citing Glenpointe Associates v. Township of Teaneck, 241 N.J.Super. 37, 46, 574 A.2d 459 (App.Div.), certif. denied, 122 N.J. 391, 585 A.2d 392 (1990)), for the proposition that one comparable sale is not sufficient competent evidence to overcome the presumption of correctness of the County Board's judgment. His reliance on this case is misplaced. In Phillips, "plaintiffs' only potentially competent evidence was one alleged comparable sale, which sold for $5,500 more than the $154,500 that the County Board decided was the true value of the subject property. The comparable nature of the property was questionable as no adjustments for evident differences were made." Id. at 227.
*375 Phillips does not proscribe in all circumstances the use of one comparable sale as sufficient competent evidence to overcome the County Board's judgment. Phillips is distinguishable because of the peculiar nature of the property and the lack of adjustments made in its valuation. "Because no two properties are exactly alike, comparable properties must be analyzed and adjustments must be made which recognize and explain the differences and ... [which] relat[e] the two properties to each other in a meaningful way so that an estimate of value can be determined." Phillips v. Hamilton Tp., supra (15 N.J.Tax at 227).
Given the competent evidence presented, the Tax Court Judge's decision was not arbitrary, but, rather, was supported by substantial credible evidence in the record.
Next, Bonsangue contends that the Township's expert witness applied adjustments on properties that were of a magnitude that vitiated the probative value of the sales, and thus should be disqualified as valid comparables. We reject this argument.
In using comparable properties to value property for real property tax purposes, comparable properties must be analyzed and adjustments must be made which recognize and explain differences and which relate two properties to each other in a meaningful way so that an estimate of value can be determined. Phillips v. Hamilton Tp., supra (15 N.J.Tax at 227).
The number of adjustments made, the failure of an appraiser to support and justify adjustments, the nature of the differences between the subject property and each comparable sale, and the distances of comparable sales from the subject property are all factors of an adjustment that makes the comparable sales data meaningful for purposes of establishing the value of the subject property. Schmertz v. Dover Tp., 4 N.J.Tax 145, 150 (Tax Ct.1982).
The factors used for determining adjustments are based upon the testimony of experts. The probative utility of an expert's opinion stands or falls on the facts and reasoning offered in its support. See Dworman v. Borough of Tinton Falls, 1 N.J.Tax 445, 458 (Tax Ct.1980), aff'd o.b., 180 N.J.Super. 366, 3 N.J. Tax 1, 434 A.2d 1134 (App.Div.), certif. denied, 88 N.J. 495, 443 A.2d 709 (1981); M.I. Holdings v. Jersey City, 12 N.J.Tax 129, 138 (Tax Ct.1991).
For lot 15.02, the tax assessor made a positive adjustment of 40% to the comparable sales, testifying that each of the comparable properties were interior lots, while lot 15.02 itself was a corner lot fronting on a high traffic corner. In evaluating lot 15.03, the tax assessor made a negative adjustment of 30% to the comparable sales because each of those lots fronted high traffic corners, while lot 15.03 itself was an interior lot fronting a street with a lower traffic volume.
The judge rejected the valuation opinion of the property owner's expert witness because he used none of the four sales in Little Egg Harbor, and went to neighboring communities solely because he felt the prices were too high in the Township. The judge was of the view that the property owner's expert had a predetermined idea of what he thought the property was worth and ignored sales in the Township to go to another zone in another municipality.
Furthermore, Bonsangue failed to demonstrate that any of Sorrentino's adjustments with regard to the comparable sales used for comparison in determining valuation of appellant's properties were unreasonable in light of relevant considerations.
Here, the Tax Court concluded that the comparable sales and their adjustments presented by the Township's expert constituted "sufficient competent evidence" to overcome the presumption of correctness of the County Board's judgment. Given the evidence presented by the tax assessor and accepted by the court as competent, the judge's decision was not arbitrary and was supported by substantial credible evidence in the record.

IV.
Bonsangue contends that the proofs adduced by the Township do not overcome the presumption of validity established by the County Board's judgment, relying on Byram Township v. Western World, Inc., 111 N.J. *376 222, 234-235, 544 A.2d 37 (1988). He contends that the Township's valuation based on four comparable sales should be considered erroneous because not only were two of the "sales" based on unconsummated contracts of sale, but also because two of the sales were subject to negative adjustments of 30%, and, two of the sales were subject to positive adjustments of 40%. The property owner contends that based on these factors the presumption has not been overcome and the assessments by the County Board should be reinstated.
We generally defer to the Tax Court's expertise and limit our review to a determination of whether the Tax Court came to its decision in an arbitrary fashion and whether its findings of fact are supported by substantial credible evidence. Glenpointe Associates v. Township of Teaneck, supra (241 N.J.Super. at 46, 574 A.2d 459); Southbridge Park, Inc. v. Borough of Fort Lee, 201 N.J.Super. 91, 94, 492 A.2d 1026 (App.Div.1985).
The presumption of correctness of a county board's tax assessment judgment stands, until sufficient competent evidence to the contrary is adduced. Byram Township v. Western World, Inc., supra (111 N.J. at 235, 544 A.2d 37). Then the presumption in favor of county board's judgment ceases to have any artificial probative force. Borough of Rumson v. Peckham, 7 N.J.Tax 539, 549-550 (Tax Ct.1985).
Once this presumption is overcome, it becomes incumbent upon the court to appraise the conflicting testimony, make a determination of true value, and fix the assessment. Rodwood Gardens, Inc. v. City of Summit, 188 N.J.Super. 34, 38-39, 455 A.2d 1136 (App.Div.1982).
Certain deference is accorded to the findings of the Tax Court Judge because of his expertise. Harrison Realty Corp. v. Town of Harrison, 17 N.J.Tax 174, 176 (App. Div.), certif. denied, 153 N.J. 213, 708 A.2d 64 (1998). In this regard, the Tax Court Judge may apply his own judgment to the data submitted to arrive at his determination of true value. Harrison Realty Corp. v. Town of Harrison, supra (17 N.J.Tax at 176); Glenpointe Associates v. Township of Teaneck, supra (241 N.J.Super. at 46-47, 574 A.2d 459.)
Here, there was sufficient competent evidence presented by the Township to overcome the presumption of correctness in favor of the County Board judgment. Byram Township v. Western World, Inc., supra (111 N.J. at 235, 544 A.2d 37); Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952). The Tax Court's determination of the true value of the properties is the full and fair value of the subject properties. Rek Investment Co. v. Newark, 80 N.J.Super. 552, 557, 194 A.2d 368 (App.Div.1963); Atlantic City v. Moltich, 3 N.J.Tax 147, 153 (Tax Ct.1981).
Affirmed.
NOTES
[1] The issue of assembly of the two adjacent lots in common ownership was apparently not implicated in the valuation. See Loechner v. Campoli, 49 N.J. 504, 508, 231 A.2d 553 (1967) (contiguous, nonconforming, vacant lots, assembled under common ownership, lose their individual identity and become a single parcel).
[2] The 1997 assessment was the subject of an appeal in Bonsangue v. Little Egg Harbor Tp., 17 N.J.Tax 439 (Tax Ct.1998) (1997 assessment increase rejected on technical grounds).
[3] That statute lists no penalties and charges the State Real Estate Appraiser Board with the enforcement of the act. N.J.S.A. 45:14F-8a. We note that in Attorney General Opinion No. 0003 (January 7, 1997) the attorney general addressed the licensing requirements of N.J.S.A. 45:14F-1 et seq. and opined that these requirements do not apply to municipal tax assessors because they do not perform appraisal assignments within the meaning of the statute, and are sufficiently regulated by a previously existing comprehensive scheme. That opinion indicated that this exception might not apply to an "appraisal assignment." We are at a loss to determine how Hackensack Water Co. v. Township of North Bergen, 18 N.J.Misc. 627, 629, 15 A.2d 899 (Bd. Tax App.1940), would support any "appraisal assignment" exception as referred to in the attorney general's opinion. In that case there was an unexplained increase in valuation and the tax assessor was found unqualified to testify as to valuation of utility or waterworks property. His qualifications as an expert were rejected by the State Board of Tax Appeals. In the context of an appeal between a property owner and the taxing district involving the tax assessor's valuation assessment, we have little doubt that the tax assessor, if qualified as an expert witness, may testify in the Tax Court as to valuation, as the tax assessor did here.
[4] Various cases have discussed the hybrid status of a tax assessor. See, e.g., Kaman Director, Div. of Taxation v. Montague Tp. Committee, 306 N.J.Super. 291, 296 n. 2, 703 A.2d 680 (App.Div. 1997), certif. granted, 156 N.J. 383, 718 A.2d 1212 (1998); Mitchell v. City of Somers Point, 281 N.J.Super. 492, 499-500, 658 A.2d 1276 (App.Div.1994).
[5] For convenience we refer generally to the tax assessor's "Valuation Analysis" as an appraisal. The judge also used the property owner's expert's appraisal for the same purpose.