TAX COURT OF NEW JERSEY

210 S. Broad Street
5th Floor
Mary Siobhan Brennan, J.T.C.                                    Trenton, New Jersey 08608
Judge                                             (609) 815-2922, Ext. 54560



NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE TAX COURT
COMMITTEE ON OPINIONS

January 17, 2020

John C. Penberthy, Esq.
Law Office of John C. Penberthy
113 White Horse Road, Suite 2
Voorhees, New Jersey 08043

Gregory B. Pasquale, Esq.
Shain Schaffer
150 Morristown Road
Suite 105
Bernardsville, New Jersey 07924

> Re:     Olbrys, Renata v. Monroe Township
>         Docket No. 011784-2016

Dear Mr. Penberthy and Mr. Pasquale:

This letter constitutes the court's opinion after trial in the above-referenced matter. Plaintiff challenges the local property tax assessment on her residence for tax year 2016.  For the reasons explained more fully below, the court will enter judgment lowering the assessment.

Pursuant to R. 1:7-4, the court makes the following findings of fact and conclusions of law.

## I.       Procedural History and Factual Findings

Renata Olbrys ("plaintiff") is the owner of a single-family home located at 370 Rue Road, in the Township of Monroe, County of Middlesex, and State of New Jersey.  The property is

1

identified on the tax map of the Township of Monroe as Block 54, Lot 8.2 ("subject property"). For the 2016 tax year, the subject property was assessed as follows:

| | |
|---|---|
| Land: | $ 167,100 |
| Improvements: | $ 234,600 |
| Total | $ 401,700 |

The average ratio of assessed to true value, commonly referred to as the Chapter 123 ratio, for the Township of Monroe ("defendant") for the 2016 tax year is 90.21%, with a corresponding Chapter 123 common level range between 76.68% and 103.74% (effectively 100%). See N.J.S.A. 54:1-35a(a); N.J.S.A. 54:1-35a(b). When the average ratio is applied to the assessment, the implied equalized value of the subject property for the 2016 tax year is $445,294.31.

Plaintiff filed a timely petition of appeal with the Middlesex County Board of Taxation challenging the 2016 tax year assessment. On June 24, 2016, the Board entered a Memorandum of Judgment affirming the assessment. On August 10, 2016, plaintiff filed a timely Complaint with the Tax Court contesting the Board's Judgment. The defendant did not file a counterclaim. The matter was tried to conclusion on January 7, 2020.

At trial, both parties presented the testimony of a State of New Jersey certified general real estate appraiser. Neither party challenged the qualifications of the other party's expert and the court accepted both individuals as experts in the field of residential real estate appraisal. Plaintiff's expert prepared an appraisal report dated June 16, 2016, which was admitted in evidence, without objection. In addition, defendant's expert prepared an appraisal report dated October 16, 2019, which was also admitted in evidence without objection.

The subject property is a two-story Colonial style, single-family home, approximately 37 years of age, in average condition. The home is situated on a 0.71-acre lot located on a rural street that is used as a cut-through road between Spotswood Englishtown Road and Old Bridge-

Englishtown Road. The house consists of a total of seven rooms with three bedrooms, two full bathrooms, a half bathroom, no basement, and an attached two-car garage. The home has a gross living area ("GLA") of 2,324 square feet. It has central air conditioning and utilizes oil as heating fuel with an above ground tank located at the side of the dwelling. The subject property is supported by a well, and a septic system. Additional amenities include granite countertops in the kitchen, a patio, a second-floor deck, a gazebo, a fence, an in-ground pool, and a fireplace.

Both experts employed the comparable sales approach to reach an opinion of the true market value of the subject property. Plaintiff's expert offered his opinion that, as of the October 1, 2015 valuation date, the true market value of the subject property was $360,000. Defendant's expert found true market value to be $420,000.

The court finds that three of the plaintiff's comparable sales and two of the defendant's comparable sales are reliable indicators of the subject property's value. All are in Monroe Township and their sale dates are in reasonable proximity to the October 1, 2015 assessment date. After accepting those adjustments that the court finds reasonable and persuasive, the court finds the subject property's value to be $382,000. Since the assessed-to-true value ratio exceeds 100%, the court applies the Chapter 123 ratio and reduces the assessment to $344,602.20, or $344,600 (rounded).

## II.     Conclusions of Law

### A.  Presumption of Validity

The court's analysis begins with the well-established principle that "assessments . . . are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). As Judge Kuskin explained, our Supreme Court has defined the parameters of the presumption as:

[t]he presumption attaches to the quantum of the tax assessment. Based on this presumption the appealing taxpayer has the burden of proving that the assessment is erroneous. The presumption in favor of the taxing authority can be rebutted only by cogent evidence, a proposition that has long been settled. The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be "definite, positive and certain in quality and quantity to overcome the presumption."

[Ibid. (quoting Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985)).]

The presumption of correctness arises from the view "that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law." Pantasote, 100 N.J. at 413 (citing Powder Mill I Assocs. v. Twp. of Hamilton, 3 N.J. Tax 439, 235 (Tax 1981)); see also Byram Twp. v. W. World, Inc., 111 N.J. 222, 235 (1988). This presumption remains "in place even if the municipality utilized a flawed valuation methodology, so long as the quantum of the assessment is not so far removed from the true value of the property or the method of assessment itself is so patently defective as to justify removal of the presumption of validity." Transcon. Gas Pipe Line Corp. v. Twp. of Bernards, 111 N.J. 507, 517 (1988).

"The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Twp. of Little Egg Harbor v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998); see City of Atl. City v. Ace Gaming, LLC, 23 N.J. Tax 70, 98 (Tax 2006). "In the absence of a R. 4:37-2(b) motion . . . the presumption of validity remains in the case through the close of all proofs." MSGW Real Estate Fund, 18 N.J. Tax at 377. In making the determination of whether the presumption has been overcome, the court should weigh and analyze the evidence "as if a motion for judgment at the close of all the evidence had been made pursuant to R. 4:40-1 (whether or not the defendant or plaintiff actually so moves), employing the evidentiary standard applicable to such a motion." Ibid. The court must accept as true the proofs of the party

4

challenging the assessment and accord that party all legitimate favorable inferences from that evidence.  Id. at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995)).  In order to overcome the presumption, the evidence "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'"  W. Colonial Enters., LLC v. City of E. Orange, 20 N.J. Tax 576, 579 (Tax 2003) (quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div. 2000)), aff'd, 21 N.J. Tax 590 (App. Div. 2004).

Only after the presumption is overcome with sufficient evidence at the close of trial must the court "appraise the testimony, make a determination of true value and fix the assessment." Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38 (App. Div. 1982).  If the court determines that sufficient evidence to overcome the presumption has not been produced, the assessment shall be affirmed, and the court need not proceed to making a value determination. Ford Motor Co. v. Twp. of Edison, 127 N.J. 290, 312 (1992); Glob. Terminal & Container Servs. v. City of Jersey City, 15 N.J. Tax 698, 703-04 (App. Div. 1996).

At the close of plaintiff's case, defendant moved to dismiss the appeal for failure to overcome this statutory presumption of correctness. In evaluating whether the evidence presented meets the "cogent evidence" standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence."  Id. at 376 (citing Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520 (1995)).  The evidence presented, when viewed under the Brill standard "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'"  West Colonial Enters, LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003)(quoting Lenal Props., Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18

5

N.J. Tax 658 (App. Div. 2000), <u>certif. denied</u>, 165 N.J. 488 (2000)). If the court concludes that evidence sufficient to overcome the presumption of validity has not been presented, judgment must be entered affirming the assessment. <u>Ford Motor Co. v. Twp. of Edison</u>, 127 N.J. 290, 312 (1992). "Only after the presumption is overcome with sufficient evidence…must the court 'appraise the testimony, make a determination of true value and fix the assessment.'" <u>Greenblatt v. Englewood City</u>, 26 N.J. Tax 41, 52 (Tax 2011)(quoting <u>Rodwood Gardens, Inc. v. City of Summit</u>, 188 N.J. Super. 34, 38-39 (App. Div. 1982)).

According the plaintiff all reasonable inferences which can be deduced from the evidence, the court concluded that the opinions of value offered by plaintiffs' expert, which were based on an accepted methodology for determining value, and on evidence of the type often used for such determinations, if accepted as true, raised doubt in the court's mind with respect to whether the assessment on the subject property exceeded its true market value for the tax year in question. The court found that plaintiff produced cogent evidence sufficient to overcome the presumption of validity that attaches to the assessment. Accordingly the court denied defendant's motion.

However, concluding the presumption of validity has been overcome, does not equate to a finding by the court that the assessment is erroneous. Once the presumption has been overcome, "the court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence." <u>Ford Motor Co.</u>, 127 N.J. at 312. The court must be mindful that "although there may have been enough evidence [presented] to overcome the presumption of correctness at the close of plaintiff's case-in-chief, the burden of proof remain[s] on the taxpayer…to demonstrate that the judgment under review was incorrect." <u>Id</u>. at 314-15 (citing <u>Pantasote Co.</u>, 100 N.J. at 413).

B.        Highest and Best Use.

A determination of true market value requires a determination of the property's highest and best use on the relevant valuation dates.  See Clemente v. Twp. of S. Hackensack, 27 N.J. Tax 255, 267-69 (Tax 2013), aff'd, 28 N.J. Tax 337 (App. Div. 2015).  The court finds that the highest and best use of the subject property on the relevant valuation date was its continued use as a single-family residence.

C.        Methodology

"There are three traditional appraisal methods utilized to predict what a willing buyer would pay a willing seller on a given date, applicable to different types of properties: the comparable sales method, capitalization of income and cost."  Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div. 2001)(citing Appraisal Institute, The Appraisal of Real Estate 81 (11th ed. 1996), certif. denied, 168 N.J. 291 (2001)).  "[T]he answer as to which approach should predominate depends upon the facts in the particular case."  WCI-Westinghouse, Inc. v. Twp. of Edison, 7 N.J. Tax 610, 619 (Tax 1985), aff'd, 9 N.J. Tax 86 (App. Div. 1986).  The sales comparison approach derives an opinion of market value "by comparing properties similar to the subject property that have recently sold, are listed for sale, or are under contract."  Appraisal Institute, The Appraisal of Real Estate 377 (14th ed. 2013).  This approach requires the appraiser to engage in a "comparative analysis of properties" and to focus on the "similarities and differences that affect value . . . which may include variations in property rights, financing, terms, market conditions and physical characteristics."  Id. at 378.  Here the court concludes, as did both experts, the sales comparison approach is the most appropriate method to determine the true market value of the subject property.

7

D.    Valuation

1. *Experts' Comparable Sales*

Plaintiffs' expert used five comparable sales located in Monroe Township. They are stylistically mixed. Sale One, a 33-year-old Bi-Level home, is located 3.4 miles west of the subject property at 1682 Perrineville Road ("1682 Perrineville") and sold on August 20, 2015 for $365,000. Sale Two, a 44-year-old Bi-Level home, is located 1.72 miles northwest of the subject property at 7 Garvey Drive ("7 Garvey") and sold on October 22, 2014 for $327,000. Sale Three, a 66-year-old Colonial home, is located 2.00 miles west of the subject property at 408 Buckalew Avenue ("408 Buckalew") and sold on April 29, 2015 for $300,000. Sale Four, a 49-year-old Split-Level home, is located 2.34 miles west of the subject property at 324 Buckalew Avenue ("324 Buckalew") and sold on July 22, 2015 for $290,000. Sale Five, a 38-year-old Ranch home, is 3.69 miles southwest of the subject property at 9 Union Valley Road ("9 Union Valley") and sold on September 4, 2015 for $350,000.

The defendant's expert used three comparable sales of only Colonial style homes, all located in Monroe Township. Sale One, a 41-year-old home, is 3.52 miles southwest of the subject property at 115 Federal Road ("115 Federal") and sold on July 10, 2015 for $375,000. Sale Two, a 41-year-old home, is 2.13 miles northwest of the subject property at 5 Elizabeth Avenue ("5 Elizabeth") and sold on June 10, 2015 for $450,000. Sale Three, a 20-year-old home, is 4.48 miles west of the subject property at 7 Moorland Boulevard ("7 Moorland") and sold on May 1, 2015 for $463,000.

The court finds plaintiff's comparable sales One, Two, and to a lesser extent Three credible. Defendant's challenge to plaintiff's comparable sales One, Two, Four, and Five on grounds that they were not in the same Colonial style as the subject property is persuasive as to comparable

8

sales Four (Split-Level) and Five (Ranch). However, the MLS[1] pictures of plaintiff's comparable sales One and Two indicate that they are not so dissimilar in appearance to the subject property as to be rejected outright as a comparable property.

The court further finds that the defendant's sales One and Two are credible. Plaintiff's challenge to defendant's third comparable sale on the basis that it is in a developed community surrounding a golf course is persuasive. The court finds that such a location is too dissimilar from the location of the subject property to be reliable.

2. *Experts' Adjustments to the Comparable Sales*

Both experts adjusted their comparable sales for site size, GLA, room count, and amenities (garage, porch, deck, swimming pool, fence, fireplace, and the like). Plaintiffs' expert also adjusted for street/traffic location, heating/cooling, and basement, while the defendant's expert made additional adjustments for design, public water, and sewer. The credibility of the adjustments is discussed below.

In this connection, it should be noted that in making value determinations, the Tax Court is regarded as an expert, and can adopt, reject, or adapt, all or a portion of the experts' value opinions. Jersey City, Div. of Water v. Twp. of Parsippany-Troy Hills, 16 N.J. Tax 504, 528 (Tax 1997), aff'd, 17 N.J. Tax 538 (App. Div. 1998). Although the court must "apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question," it cannot adjust value without sufficient cognizable factual evidence in the

---

[1] Every major market in the United States is served by a multiple listing service referred to as MLS. An MLS primarily contains data on residential properties listed for sale during the calendar year or physical quarter. See Appraisal Institute, The Appraisal of Real Estate 119 (14th ed. 2013).

record. Twp. of Warren v. Suffness, 225 N.J. Super. 399, 413-14 (App. Div.) (citations omitted), certif. denied, 113 N.J. 640 (1988). Nor can it "arbitrarily assign a value to the property not supported in the record." U.S. Life Realty Corp. v. Twp. of Jackson, 9 N.J. Tax 66, 79 (Tax 1987). The above principles should be balanced with the reality that very often "adjustments made to comparable sales are mainly subjective in nature." Owens-Illinois Glass Co. v. Bridgeton, 8 N.J. Tax 495, 512 (Tax 1986). Thus, the court is left to decide the credibility of the same.

The sale prices of the plaintiff's expert's comparable sales One, Two and Three ranged from $300,000 to $365,000. After adjustments, the adjusted sale prices ranged from $336,150 to $370,500.

Sale One, 1682 Perrineville, is a 33-year-old Bi-Level single-family home of average condition. It is situated on a 1.38-acre lot on a rural road, and consists of seven rooms, with three bedrooms, two and a half bathrooms, and a two-car garage. Amenities include two fireplaces, a patio, and deck. GLA is virtually the same as the subject property. Plaintiff's expert made a negative lot size adjustment of $33,500, a negative adjustment for the additional fireplace of $1,000, and a positive adjustment of $16,000 for the absence of a pool and fence. In total, the expert made net adjustments of 5.1% and gross adjustments of 13.8% to comparable sale One. The final adjusted sale price was $346,500.

Sale Two, 7 Garvey, is a 44-year-old Bi-Level single-family home of average condition. It is situated on a 0.68-acre lot on a quiet street, and consists of seven rooms, with three bedrooms, one and a half bathrooms, and a two-car garage. Amenities include a patio, an in-ground swimming pool, and fence. GLA is 1,964 square feet, approximately 360 square feet smaller than the subject property. Plaintiff's expert made a negative location adjustment of $16,350, a positive lot size adjustment of $1,500, a positive adjustment of $4,000 for the one less bathroom, a positive

10

adjustment of $18,000 for the smaller GLA, a positive adjustment of $1,000 for the lack of a deck, and a positive adjustment of $1,000 for the lack of a fireplace. In total, the expert made net adjustments of 2.7% and gross adjustments of 12.8% to comparable sale Two. The final adjusted sale price was $336,150.

Sale Three, 408 Buckelew, is a 66-year-old Colonial single-family home of average condition. It is situated on a 0.46-acre lot on a busy road, and consists of six rooms, with three bedrooms, two bathrooms, and a one-car garage. GLA is 1,784 square feet, approximately 540 square feet smaller than the subject property. Plaintiff's expert made a positive location adjustment of $15,000, a positive lot size adjustment of $12,500, a positive adjustment of $2,000 for the one less room and half bathroom, a positive adjustment of $27,000 for the smaller GLA, a negative adjustment of $10,000 for a full unfinished basement, a positive adjustment of $3,000 for the lack of central air conditioning, a positive adjustment of $3,000 for the smaller garage, a positive adjustment of $2,000 for the lack of a patio or deck, a positive adjustment of $1,000 for the lack of a fireplace, and a positive adjustment of $15,000 for the lack of a pool. In total, the expert made net adjustments of 23.5% and gross adjustments of 30.2% to comparable sale Three. The final adjusted sale price was $300,000.

In undertaking a sales comparison approach, a substantial similarly must exist between the subject property and the comparable properties. "Evidence of comparable sales is effective in determining value only where there is a substantial similarity between the properties." Venino v. Borough of Carlstadt, 1 N.J. Tax 172, 175 (Tax 1980), aff'd o.b. 4 N.J. Tax 528 (App. Div. 1981). By definition, comparability does not require properties to be identical, "differences between a comparable property and the subject property are anticipated. They are dealt with by adjustments recognizing and explaining these differences, and then relating the two properties to each other in

a meaningful way so that an estimate of the value of one can be determined from the value of the other." U.S. Life Realty Corp. v. Jackson Twp., 9 N.J. Tax 66, 72 (Tax 1987). Thus, a fundamental predicate of the comparable sales approach requires evidence "be based on 'sound theory and objective data', rather than on mere wishful thinking." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376 (quoting FMC Corp. v. Unmack, 92 N.Y.2d 179, 188 (1998)). An appraiser must establish appropriate "elements of comparison for a given appraisal through market research and support those conclusions with market evidence." Appraisal Institute, The Appraisal of Real Estate 390 (14th ed. 2013). Hence, the probative value of the comparable analysis hinges upon the similarities which can be drawn, and the objective market data utilized to support adjustments thereto.

The court concludes that an adequate record exists for the adjustments made by plaintiff's expert, except for the location adjustment. Plaintiff's expert failed to present market data to support his characterizations of the road and traffic conditions bordering the subject property and the comparable properties. He only offered his opinion and observations. No traffic studies were conducted or reviewed and the expert's testimony as to his personal observations was limited.

Qualified expert testimony is admissible when it will assist the trier of fact, however there must be a factual, scientific or technical basis for an expert's opinion. Rubanick v. Witco Chemical Corp., 242 N.J. Super. 36 (App. Div. 1990), modified on other grounds, 125 N.J. 421 (1991). Once admitted, the weight to be accorded expert testimony "depends upon the facts and reasoning which form the basis of the opinion. An expert's conclusion can rise no higher than the data providing the foundation." Inmar Associates v. Edison Twp., 2 N.J. Tax 59, 66 (Tax 1980). For an expert's testimony to be of any value to the trier of fact, it must have a proper foundation. Peer v. City of Newark, 71 N.J. Super. 12, 21 (App. Div. 1961), certif. denied 36 N.J. 300 (1962).

If an expert "offers an opinion without providing specific underlying reasons…he ceases to be an aid to the trier of fact." Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996). Thus, the bare conclusions of an expert, lacking a proper foundation and unsupported by factual evidence and objective data, are inadmissible net opinions. Buckelew v. Grossbard, 87 N.J. 512, 524 (1981); Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002); State v. Townsend, 186 N.J. 473, 494-95 (2006); Pomerantz Paper Corp. v. New Community Corp., 207 N.J. 344, 372 (2011).

In the present matter, the expert failed to provide the court with any objective market data, comparative studies or analysis to support his adjustments for location. The expert's adjustments were based solely upon his personal observations and had no foundation in the marketplace. Thus, without the data and information supporting such adjustments the court is unable to gauge the impact such elements of comparison have on the value of the subject property.

As to court's analysis of valuation of the three comparable sales relied upon by the defense expert, comparable sale Three, due to its location in a golf course community, is eliminated as credible evidence of the subject property's true value. The court will look only to defendant's comparable sales One and Two. The sale prices of the defendant's expert's comparable sales One and Two were $375,000 and $450,000 respectively. After adjustments, the adjusted sale prices ranged from $404,695 to $410,495.

Defendant's sale One, 115 Federal, is a 41-year-old Colonial single-family home of average condition. It is situated on a 0.68-acre lot on a residential road, and consists of eight rooms, with four bedrooms, two bathrooms, one half bathroom, and a two-car garage. GLA is 2,184 square feet, approximately 157 square feet smaller than the subject property. Defendant's expert made a positive design/style adjustment of $20,000 because he believed the home to be

13

aesthetically inferior to the subject property. He also made a negative adjustment of $5,000 for the extra bedroom, a positive adjustment of $5,495 for the smaller GLA, a positive adjustment of $15,000 for the lack of a pool and fence. In total, the expert made net adjustments of 9.5% and gross adjustments of 12.1% to comparable sale One. The final adjusted sale price was $410,495.

Defendant's sale Two, 5 Elizabeth, is a 41-year-old Colonial single-family home of average condition. It is situated on a 0.68-acre lot on a residential road in a development community. The home consists of eight rooms, with four bedrooms, two bathrooms, one half bathroom, a two-car garage, and a patio, pool, and fence. Unlike the subject property, it also has public water and sewer, as well as a finished basement. GLA is 3,064 square feet, approximately 723 square feet larger than the subject property. Defendant's expert made a negative adjustment of $5,000 for the extra bedroom, a negative adjustment of $25,305 for the larger GLA, a negative adjustment of $5,000 for the unfinished basement, and a negative adjustment of $10,000 for the public water and sewer. In total, the expert made net adjustments of 10.1% and gross adjustments of 10.1% to comparable sale Two. The final adjusted sale price was $404,695.

The court concludes that an adequate record exists for most of the adjustments made by defendant's expert. The exceptions are the basement adjustment, which the court finds plaintiff's expert's $10,000 adjustment to be more credible and the defendant's design/style adjustment to comparable sale One lacks authoritative support with objective market data, rendering that adjustment unreliable.

However, "[t]he trial judge as the factfinder is not bound by the opinion valuation of the experts on either side. Just as a jury, a judge may adopt 'so much of it as appears sound, reject all of it, or adopt all of it.'" Riorano, Inc. v. Weymouth Twp., 4 N.J. Tax 550, 564 (Tax 1982)(quoting State Highway Com. v. Dover, 109 N.J.L. 303, 307 (E. & A. 1932)). Our Supreme Court long

14

ago recognized that "[t]he Tax Court has not only the right, but the duty to apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question." Glen Wall Associates v. Twp. of Wall, 99 N.J. 265, 280 (1985)(citing New Cumberland Corp. v. Roselle, 3 N.J. Tax 345, 353 (Tax 1981). Thus, the court is faced with the responsibility of applying its own judgment to the evidence presented to determine the true market value of the subject property.

Based on the above, the court finds that the market value estimate of the subject property will fall within the range formed by the adjusted sales prices of the comparables. Since some of the adjustments made to the sales prices of the comparables are more subjective than others, weighted consideration is typically given to those comparables that have the least amount of adjustment.

Of the five comparable sales considered by the court to be credible defendant's sale One, absent the design style adjustment, is the most similar in style, size and amenities to the subject property. Thus, the court will give 115 Federal significantly more weight. Plaintiff's sale Three, although of the Colonial style, is the comparable with a significantly higher net and gross adjustment, and consequently the court gives that comparable very little weight.

After consideration of the five reliable comparable property sales, the court concludes the true market value of the subject property, as of the October 1, 2015 valuation date, was $382,000.

Having reached a conclusion of the true market value of the subject property, the court will turn its attention to a determination of the correct assessment for the 2016 tax year. Under N.J.S.A. 54:51A-6(a), commonly referred to as Chapter 123, when the court is satisfied in a non-revaluation year by the evidence presented "that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it

15

shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property. . . ." N.J.S.A. 54:51A-6(a). This process involves application of the Chapter 123 common level range. N.J.S.A. 54:1-35a(b).[2]

The 2016 tax year Chapter 123 average ratio for Monroe Township is 90.21%, and the corresponding Chapter 123 common level range has a lower limit of 76.68% and an upper limit of 103.74%. The ratio of assessment, $401,700, to true market value, $382,000 yields a ratio of 105.1%.

According to N.J.S.A. 54:51A-6(b), where the average ratio for the municipality is below the county percentage level (which is 100%) and the ratio of the assessed value of the subject property to its true value exceeds the county percentage ratio (which is 100%), the court shall enter judgment revising the taxable value of the subject property by applying the average ratio for the municipality to the true value of the property. Consequently, the formula for determining the correct taxable value of the subject property for the 2016 tax year is $382,000 x .9021 = $344,602.20, which the court will rounded to $344,600. See N.J.S.A. 54:51A-6(a).

Therefore, the court will enter judgment setting the 2016 tax year assessment on the subject property as follows:

| | |
|---|---|
| Land: | $ 167,100 |
| Improvements: | $ 177,500 |
| Total | $ 344,600 |

---

[2] The common level range is defined by N.J.S.A. 54:1-35a(b) as "that range which is plus or minus 15% of the average ratio" for the municipality in which the subject property is located.

A judgment shall be entered accordingly.

_____
/s/ Hon. Mary Siobhan Brennan, J.T.C.