Robert LENTZ and Mary
Lentz, Plaintiff,

v.

Carl MASON, Helen Robinson, Cathie Galanti, Fox & Lazo, Inc., Remcor, Inc., M.J. Caparelli, Estate of Wilbur S. Ganary, Abc Corp. I–X, John Does I–X, Defendants.

No. CIV. A. 96–2319.

United States District Court,
D. New Jersey.

Jan. 11, 1999.

Jeffrey T. Kampf, Jay & Kampf, Caldwell, NJ, for Plaintiffs, Robert and Mary Lentz.

Michael G. Brennan, Brennan & Bernardin, Collingswood, NJ, John J. Dugan, Kozlov, Seaton, Romanini, Brooks & Greenberg, Cherry Hill, NJ, for Defendants, Remcor, Inc., M.J. Caparelli and the Estate of Wilbur S. Ganary.

Thomas P. Bracaglia, Frank S. Nofer, Kelly, McLaughlin & Foster, Collingswood, NJ, for Defendants, Fox & Lazo, Inc., and Cathie Galanti.

## OPINION

ORLOFSKY, District Judge.

This case involves the efforts of the Plaintiffs, Robert and Mary Lentz (collectively, "the Lentzes"), to obtain monetary damages and reimbursement for clean-up costs resulting from the alleged disposal of remnants, or "end cuts," of torpedo tubes on the Lentzes' Williamstown, New Jersey property (the "Property").[1] The Lentzes seek to recover

---

1. The facts and circumstances of this case are set forth at length in one of this Court's earlier opinions, *see Lentz v. Mason*, 961 F.Supp. 709

these costs from the remaining defendants, namely, Remcor, Inc., the manufacturer of the end cuts, M.J. Caparelli and the Estate of Wilbur S. Ganary, Remcor's former principals, and from Fox & Lazo, Inc., and Cathie Galanti (collectively, "the Defendants"), the real estate brokerage and agent who allegedly arranged for the leasing of the Property by Carl Mason, the man who disposed of the end cuts on the Property.

In the months before trial, in a paroxysm of pretrial motion practice, the remaining parties have filed thirteen pretrial motions, including ten motions *in limine* to prevent the introduction of certain evidence and three motions to amend the Joint Final Pretrial Order ("JFPO"), one filed by each of the remaining parties. Specifically, Defendants, Fox and Lazo, Inc., and Cathie Galanti (collectively, "the Fox & Lazo Defendants" or "Fox & Lazo"), joined by Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary (collectively, "the Remcor Defendants" or "Remcor"), have filed eight motions *in limine* to preclude: (1) evidence of alleged damages and/or expenses incurred in repairing the Property; (2) testimony of witnesses not timely identified; (3) evidence of alleged physical injury suffered by Robert Lentz; (4) evidence of the alleged market value of the Property; (5) evidence of damages resulting from the lost opportunity to sell the Property; (6) certain testimony of Andrew Havics, an expert witness for the Lentzes; (7) evidence of a claim for future repair or clean-up costs for the Property; and (8) evidence of alleged environmental damages. The Fox & Lazo Defendants alone have filed two motions *in limine*, seeking to preclude: (1) evidence of damages from a failure on the part of the Fox & Lazo Defendants to perform a credit check of Carl Mason or to monitor his financial status; and (2) evidence of the October 18, 1993, and October 23, 1998, Listing Agreements. Additionally, each of the remaining parties has filed either a motion or a letter application to amend the JFPO, by which the Fox & Lazo Defendants seek to add 22 new exhibits, the Remcor Defendants seek to add an expert report entitled "Review of the Havics Evalu-

ation" prepared by Robert A. Haberlein, Ph. D., QEP, dated October 27, 1998, and the Lentzes seek to include the Stipulation of Dismissal With Prejudice as to the Third–Party Complaint Only against Third–Party Defendant, Pennsylvania National Mutual Casualty Insurance Co., and sample portions of the torpedo tubes found on the Property. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331; 1367.

I shall address these motions seriatim. As will become apparent from my analysis and disposition of these motions, many of them need not have been filed. In trial advocacy, as in architecture, less is frequently more.

## I. Motions to Amend the JFPO

### A. The Fox & Lazo Defendants' Motion to Amend

The Fox & Lazo Defendants have filed a motion to amend the JFPO that seeks to add 22 new exhibits. *See* Motion of Defendants Fox & Lazo, Inc. and Cathie Galanti to Amend Joint Pre–Trial Order, dated Oct. 21, 1998. The Lentzes oppose this motion, arguing that the documents are not relevant to the issues remaining for trial, since Charles Sprigman, the subject of the documents, is no longer a party to the case. *See* Letter from Jeffrey T. Kampf, Esq., to the Honorable Stephen M. Orlofsky, dated Dec. 8, 1998. In the alternative, the Lentzes contend that the Fox & Lazo Defendants should not be permitted to amend the JFPO unless they can "show that the documents were unavailable prior to entry of the Pre–Trial order" and that the documents have "significance to the claims still being litigated." *Id.* In a telephone conversation on January 7, 1999, Michael Brennan, Esq., counsel for the Remcor Defendants, informed this Court that the Remcor Defendants do not oppose the motion.

Federal Rule of Civil Procedure 16(e) provides that "[t]he order following a final pretrial conference shall be modified only to prevent manifest injustice." Fed.R.Civ.P. 16(e); *see also Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir.1987) (holding that a motion to amend a pretrial order

(D.N.J.1997), and, therefore, will not be repeated in this opinion.

"shall be permitted only to prevent injustice"); *Leonen v. Johns–Manville Corporation*, No. 82–2684, 1989 WL 5819, at *2 (D.N.J. Jan.23, 1989) ("In the case of final pretrial orders, the standard is . . . stringent, and final pretrial orders are binding on the parties in the absence of a showing of manifest injustice."). The moving·party has the burden to demonstrate that manifest injustice will result without amendment and that the moving party had a "compelling reason why" it did not seek to amend before trial. *Petree*, 831 F.2d at 1194; *see also Leonen*, 1989 WL 5819, at *2 ("[T]he burden of showing that manifest injustice would result 'falls squarely on the moving party.'") (quoting *R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.*, 835 F.2d 1306, 1308 (10th Cir.1987)).

■ If the moving party has not demonstrated that manifest injustice will result without amendment, then "[i]t is within the district court's 'discretionary power' to allow for amendment of a pretrial order." *Daily v. Hyster Co.*, No. 87–1509, 1990 WL 250528, at *2 (D.N.J. Dec.21, 1990) (Wolin, J.); *see also Joy Mfg. Co. v. Sola Basic Indus., Inc.*, 697 F.2d 104, 109 (3d Cir.1982). In exercising their discretion, the Third Circuit has advised the district courts in this circuit to consider "the prejudice or surprise in fact of the nonmoving party[, and] the ability of that party to cure the prejudice[,]" among other factors. *Beissel v. Pittsburgh & Lake Erie Railroad Co.*, 801 F.2d 143, 150 (3d Cir.1986); *Berroyer v. Hertz*, 672 F.2d 334, 338 (3d Cir.1982); *Joy Mfg. Co.*, 697 F.2d at 109.

■ In the present case, the Lentzes, who are the only opposing party, will experience little surprise, because the Fox & Lazo Defendants filed this motion almost three months before the start of trial, providing the Lentzes with ample opportunity to cure any potential prejudice. In addition, these exhibits do not add a new claim or any new factual evidence of which the Lentzes were unaware prior to the submission of this motion to amend. Finally, the Lentzes object primarily on the ground of relevance, and have not claimed that they would suffer any prejudice as a result of the amendment of the JFPO to include these 22 exhibits. The

Lentzes will still have the opportunity to voice their objections based on relevance during the course of the trial. Accordingly, I will grant the motion of the Fox & Lazo Defendants to amend the JFPO to include the 22 exhibits listed in their motion, without prejudice to the right of the Lentzes to object to the admission of these documents if the Fox & Lazo Defendants attempt to introduce them.

### B. The Remcor Defendants' Motion to Amend

The Remcor Defendants have moved to amend the JFPO to add the expert report entitled "Review of the Havics Evaluation" prepared by Robert A. Haberlein, Ph.D., QEP, dated October 27, 1998. *See* Notice of Motion of Defendants Remcor, Inc., M.J. Caparelli and Estate of Wilbur S. Ganary's Motion to Amend Joint Pretrial Order, dated Oct. 29, 1998. The Lentzes have not opposed the Remcor Defendants' motion to amend. Since this motion is unopposed and was filed months before the commencement of trial, I will grant it.

### C. The Lentzes' Motion to Amend

The Lentzes, by letter dated December 24, 1998, have requested this Court's permission to amend the JFPO to include "the Stipulation of Dismissal With Prejudice as to the Third–Party Complaint Only, which was entered into between defendants/third-party plaintiffs, Remcor, Inc., [M.J.] Caparelli, and Estate of Wilbur S. Ganary[,] and third-party defendant, Pennsylvania National Mutual Casualty Insurance Company" (the "Stipulation of Dismissal"), and "sample portions of the torpedo tubes that existed on the plaintiffs' premises." Letter from Jeffrey T. Kampf, Esq., to the Honorable Stephen M. Orlofsky, dated Dec. 24, 1998. In a telephone conversation on January 7, 1999, Frank Nofer, Esq., counsel for the Fox & Lazo Defendants, informed this Court that the Fox & Lazo Defendants do not oppose the Lentzes' motion to amend the JFPO. By contrast, in a telephone conversation on the same day, Michael Brennan, Esq., counsel for the Remcor Defendants, informed this Court that the

Remcor Defendants oppose the motion with respect to the Stipulation of Dismissal.

█ I have already set forth the legal standard for the consideration of a motion to amend the JFPO above and, therefore, I will not repeat it. I note, however, that the same reasons exist for granting this motion as do for the one filed by the Fox & Lazo Defendants. Specifically, the motion to amend was filed long before the commencement of trial and does not include any surprising or novel legal theories or factual evidence. Additionally, the Remcor Defendants have not claimed that they would suffer any prejudice as a result of the amendment of the JFPO to include the Stipulation of Dismissal. Finally, any objections by the Remcor Defendants with respect to the relevance of the Stipulation of Dismissal may be made at the time that the Lentzes seek to introduce this document. Accordingly, I will grant the Lentzes' motion to amend the JFPO to include the Stipulation of Dismissal and sample portions of the torpedo tubes found on the Property, without prejudice to the Defendants' right to object to the relevance of these exhibits.

## II. Motions *in Limine*

### A. Motions *in Limine* Filed by Both the Fox & Lazo Defendants and the Remcor Defendants

### 1. Motion to Preclude Evidence of Alleged Damages and/or Expenses Incurred by the Lentzes in Repairing the Property

The Fox & Lazo Defendants have filed a motion, joined by the Remcor Defendants, to preclude evidence of alleged damages and/or expenses that the Lentzes incurred in repairing the Property. *See* Motion *in Limine* of Defendants, Fox and Lazo, Inc. and Cathie Galanti, to Preclude Evidence of Alleged Damages and/or Expenses Incurred in Repairing the Property ("Evidence of Alleged Damages Motion"), dated Oct. 20, 1998; Motion of Defendants Remcor, Inc., M.J. Caparelli and Estate of Wilbur S. Ganary's to Join and/or Adopt the Motion *in Limine* of *in Limine* [sic] to Preclude Evidence of Alleged Damages and/or Expenses Incurred in Repairing the Property, filed by Defendants

Fox & Lazo, Inc., and Cathie Galanti, dated Oct. 29, 1998. The Defendants claim that the Lentzes have failed to produce receipts that Plaintiff, Robert Lentz, retained, which relate to expenses the Lentzes incurred in repairing the Property. *See* Evidence of Alleged Damages Motion at 2. The Defendants argue that Robert Lentz mentioned these receipts in his deposition and that he agreed to produce them, but that he has nonetheless failed to do so. *See id.* The Defendants further claim that they "would be severely prejudiced should Plaintiffs be permitted to claim damages at trial for which they have ongoingly [sic] failed to produce the relevant and exiting [sic] documentation," because "Defendants have been denied any meaningful opportunity to scrutinize and/or investigate Plaintiff's damage claim." *Id.* at 2–3.

In response, the Lentzes assert that they have "in fact, submitted several receipts related to remediation efforts." Plaintiffs' First Memorandum of Law in Opposition to the Motions *in Limine* of Defendants Fox & Lazo, Inc. and Cathie Galanti ("Plaintiffs' First Opposition"), dated Nov. 17, 1998, at 12. The Lentzes attach to their memorandum in opposition to the motions *in limine* photocopies of 22 receipts, which they claim represent the expenses they incurred in repairing some of the damage to the Property. *See* Certification of Jeffrey T. Kampf in Opposition to the Motions *in Limine* of defendants Fox & Lazo, Inc. and Cathie Galanti ("Kampf Cert."), dated Nov. 17, 1998, Ex. E (photocopies of receipts). Further, the Lentzes argue that both Robert and Mary Lentz testified at length in their depositions about their efforts to repair the damage allegedly done to the Property by Carl Mason. *See* Plaintiffs' First Opposition at 12.

█ "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904–05 (3d Cir.1977). In determining whether to exclude evidence based on a failure to comply with discovery obligations, the court must consider: "(1) the prejudice or surprise in fact of the party against

**740**

whom" the evidence would have been used; "(2) the ability of that party to cure the prejudice[;] (3) the extent to which" admission or exclusion of the evidence "would disrupt the orderly and efficient trial of the case or other cases in the court[;] and (4) bad faith or willfulness" of the party who failed to comply with its discovery obligations. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir.1997).

▪ Even assuming that the Lentzes failed to produce the receipts at an earlier date, the Defendants now have them. Furthermore, the Defendants did not attempt to compel production of these documents, nor have they requested further discovery on the issue of repair costs. Thus, I find that the Defendants have not suffered any prejudice. In addition, exclusion of the documents would greatly prejudice the Lentzes as they constitute an important part of their evidence of damages. I find that the equities counsel against exclusion of the receipts and of other evidence relating to repair costs and, therefore, I will deny the Defendants' motion *in limine* with respect to evidence of the damages and/or expenses incurred by the Lentzes in repairing the damage to the Property.

### 2. Motion to Preclude the Testimony of Witnesses Not Timely Identified By the Lentzes During Discovery

The Fox & Lazo Defendants, again joined by the Remcor Defendants, claim that the Lentzes failed to fulfill their discovery obligations in another respect. Specifically, the Defendants have filed a motion *in limine* in which they argue that, during discovery in this case, the Lentzes did not identify in a timely manner nine witnesses listed in the JFPO, namely, Pierre Desaigne, Ken Molechenow, Mike Kaplan, Captain Carney, Kenneth Reeves, Carol Lentz, David Lentz, Ken Decker, and Robert Colame. *See* Motion *in Limine* of Defendants, Fox and Lazo, Inc. and Cathie Galanti, to Preclude Witnesses Not Timely Identified ("Motion to Preclude Witnesses Not Timely Identified"), dated Oct. 20, 1998; Motion of Defendants Remcor, Inc., M.J. Caparelli and Estate of Wilbur S. Ganary's to Join the Motion *in Limine* of *in Limine* [sic] to Preclude Witnesses Not Timely Identified, Filed by Defendants Fox & Lazo, Inc., and Cathie Galanti, dated Oct. 29, 1998; *see also* JFPO, filed Sept. 16, 1998, at 27–30 (listing these nine individuals as potential witnesses at trial). The Defendants claim that the Lentzes failed to identify these nine individuals in disclosures made pursuant to Federal Rule of Civil Procedure 26(a) or in response to interrogatories from the Fox & Lazo Defendants, which requested that the Lentzes identify such witnesses. *See* Motion to Preclude Witnesses Not Timely Identified at 2. The Defendants claim that they "would be severely prejudiced should Plaintiffs be permitted to call witnesses at trial who were not timely identified during discovery and whom Defendants have never had the opportunity to investigate or depose." *Id.*

▪ In their memorandum in opposition to the motions *in limine*, the Lentzes note that each of these witnesses, with the exception of Mike Kaplan, was identified either in response to interrogatories or by Robert Lentz in his deposition. *See* Plaintiffs' First Opposition at 6–9. I have reviewed the Lentzes' references to Robert Lentz's deposition transcript and to the Lentzes' responses to interrogatories from the Fox & Lazo Defendants and I have confirmed that every witness except Mike Kaplan was mentioned. *See* Certification of Jeffrey T. Kampf in Opposition to the Motions *in Limine* of Fox and Lazo, Inc. and Cathie Galanti, dated Nov. 17, 1998, Exs. A–C. As a result, I find that the Defendants were on notice of the existence of these witnesses months prior to the commencement of trial and to the filing of the JFPO. The Defendants had the chance to pursue their own investigation of these witnesses and they failed to do so. Furthermore, the Defendants have not requested additional time to conduct investigations or take depositions.

▪ As for Mike Kaplan, the Defendants have been aware of the Lentzes' intention to call Mike Kaplan as a witness since the filing of the JFPO on September 16, 1998. *See* JFPO, filed Sept. 16, 1998, at 28. Since that time, the Defendants have had ample opportunity to depose Kaplan or perform any other appropriate investigation. Furthermore,

the Defendants have not requested a continuance of the trial to conduct additional discovery. Thus, I find that the Defendants have not suffered any prejudice from the Lentzes' alleged failure to identify these nine witnesses, including Kaplan, in a timely manner. Accordingly, I will deny the Defendants' motion *in limine* with respects to these nine witnesses.

### 3. Motion to Preclude All Evidence of Alleged Physical Injury Suffered by Robert Lentz

The Fox & Lazo Defendants, joined by the Remcor Defendants, have filed a motion *in limine* to preclude any evidence of alleged physical injury sustained by Robert Lentz. *See* Motion *in Limine* of Defendants, Fox and Lazo, Inc. and Cathie Galanti, to Preclude Any Evidence of Alleged Physical Injury ("Motion to Preclude Evidence of Physical Injury"), dated Oct. 20, 1998; Motion of Defendants Remcor, Inc., M.J. Caparelli and Estate of Wilbur S. Ganary to Join and/or Adopt the Motion *in Limine* to Preclude Any Evidence of Alleged Physical Injury, Filed by Defendants Fox & Lazo, Inc. and Cathie Galanti, dated Oct. 29, 1998. The Lentzes claim that "[w]hen Robert Lentz entered the house and garage, he suffered from a horrific asthma attack [and] since that time, [Robert Lentz has] continued to suffer from difficulty breathing." JFPO at 15. As a result of this alleged asthma attack, the Lentzes contend that Robert Lentz "has increased the dosage of steriods in his asthma medicine," which, in turn, "caus[ed] him to suffer from a detached retina, for which he had surgery in December 1996." *Id.* The Defendants assert that the Lentzes cannot make such claims of physical injury without offering expert medical testimony "to establish a causal relationship between any physical harm alleged by Plaintiffs and the occurrence for which the defendants are sought to be held liable." Motion to Preclude Evidence of Physical Injury at 2.

The Lentzes admitted "that no medical expert has submitted a report on plaintiffs' behalf." Plaintiffs' First Opposition at 20. Nonetheless, they contend that such a report is unnecessary, because "any lay person can determine if there is a connection between perfect health and [a] sudden violent reaction after contact with the tubes." *Id.* at 21.

The Lentzes are correct. Moreover, the Defendants have dramatically misstated the law in New Jersey regarding the necessity of expert medical testimony to link a physical ailment to alleged tortious conduct. All of the cases cited by the Defendants either do not address this issue, or they reach a conclusion completely contrary to the one advanced by the Defendants. *See, e.g., In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 750 (3d Cir.1994) (holding that, under Pennsylvania law, a testifying expert must reach his or her conclusion "with a reasonable degree of medical certainty"); *Ayers v. Jackson Township*, 106 N.J. 557, 606, 525 A.2d 287 (1987) (holding "that the cost of medical surveillance is a compensable item of damages where the proofs demonstrate [it is necessary], through reliable expert testimony"); *Rubanick v. Witco Chem. Corp.*, 225 N.J.Super. 485, 542 A.2d 975 (1988) (considering the qualifications of a medical expert to testify outside his area of expertise), *rev'd on other grounds*, 242 N.J.Super. 36, 576 A.2d 4 (1990), *modified and remanded*, 125 N.J. 421, 593 A.2d 733 (1991) (holding "that a novel or relatively new scientific theory may be found sufficiently reliable, even though it is controversial and its acceptance is not widespread, if it is based on a sound methodology that draws on scientific studies reasonably relied on in the scientific community, and has actually been used and applied by responsible experts or practitioners in the particular field").

Those New Jersey cases that do address this issue conclude that a medical expert is necessary only where the alleged injury is subjective, that is, where it is not a physical injury. *See McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 833 (3d Cir.1994) ("New Jersey courts require expert testimony to prove the causal link between a claimed injury and the tortious act alleged when the plaintiff is claiming that he or she suffered subjective injury (such as pain, humiliation, emotional distress) that is not obviously related to an identifiable injury."); *Bushman v. Halm*, 798 F.2d 651, 658 (3d Cir.1986) (holding that "an analysis of New Jersey case law

reveals no general rule that expert testimony is required on the issue of causation in all negligence cases .... [but often] expert testimony is required to buttress subjective evidence of a condition not readily identifiable with an alleged injury"). By contrast, if the plaintiff presents evidence of "objectively identifiable symptoms," then "a jury could infer causation even in the absence of an expert witness." *McKenna*, 32 F.3d at 834. This approach "is a rational outgrowth of the legal premise that ... common knowledge may provide a sound basis from which a causal sequence may be inferred." *Bushman*, 798 F.2d at 659.

 In this case, the Lentzes allege that Robert Lentz had an asthma attack as well as subsequent difficulty in breathing when he reentered the Property and was exposed to the "end cuts," a condition for which his doctor prescribed an increased dosage of steroids, which, in turn, caused Robert Lentz to suffer from a detached retina. *See* JFPO at 28. The cause of an asthma attack under the circumstances of this case is not so complex that it is beyond the common knowledge of the average juror. In other words, a juror has the ability to deduce from the evidence presented at trial whether alleged hazardous contaminants left on the Property caused Robert Lentz to have an asthma attack. By contrast, most people without medical training would not know that an increased dosage of steroids can cause a person's retina to detach. Indeed, the causal link between a detached retina and an increased dosage of steroids is not within the common knowledge of jurors and can only be established by the presentation of expert testimony. Accordingly, I will deny the Defendants' motion *in limine* to preclude evidence of alleged physical injury with respect to the asthma attack, however, I will exclude all evidence relating to the detached retina and any surgery necessary to correct this condition.

### 4. Motion to Preclude All Evidence of the Alleged Market Value of the Property

The Fox & Lazo Defendants, joined by the Remcor Defendants, have filed a motion *in limine* to preclude any evidence of the alleged market value of the Property. *See* Motion *in Limine* of Defendants, Fox and Lazo, Inc. and Cathie Galanti, to Preclude Plaintiffs and their Experts from Introducing Any Any [sic] Evidence of Alleged Market Value of the Property ("Motion to Preclude Evidence of the Market Value of the Property"), dated October 20, 1998; Motion of Defendants Remcor, Inc., M.J. Caparrelli and Estate of Wilbur S. Ganary to Join and/or Adopt the Motion *in Limine* to Preclude Plaintiffs and Their Experts from Introducing the Evidence of Alleged Market Value of the Property, Filed by Defendants Fox & Lazo, Inc. and Cathie Galanti, dated Oct. 29, 1998. Upon consideration of the report of the Lentzes' expert witness, Dr. Frank D. Tinari, the Defendants argue that the Lentzes have incorrectly calculated the market value of the Property at $195,000. *See* Motion to Preclude Evidence of the Market Value of the Property at 2. The Defendants contend that Dr. Tinari's report is flawed since his "sole basis for assuming that the value of the Property was $195,00 was because [Carl] Mason allegedly entered into a contract for that amount." *Id.* The Defendants argue that New Jersey law prohibits the use of failed sales agreements as evidence in assessing the market value of Property. *See id.* Further, the Defendants contend that there is evidence which contradicts Dr. Tinari's assumption that the market value of the home is worth $195,000.

The Defendants, again, have presented this Court with a misstatement of New Jersey case law. The Defendants rely on *Olin Mathieson Chemical Corp. v. Paulsboro Borough* to argue that "as a matter of law, the New Jersey Courts have determined that a failed sales agreement cannot be relied upon by an expert (including individuals with real estate expertise) as a basis for establishing the alleged value of real property." Motion to Preclude Evidence of the Market Value of the Property at 2; *see also Olin Mathieson Chem. Corp. v. Paulsboro Borough*, 3 N.J.Tax 255, 262 (N.J.Tax Ct.1981). In that case, however, the New Jersey Tax Court only held that "mere offers or options to sell or purchase ... [are] not admissible" as evidence of market value. The Court distin-

guished a mere offer or option to sell or purchase from a "binding agreement of sale with all its terms and conditions being made known." *See id.*

■ A further review of New Jersey case law confirms that failed sales agreements do constitute admissible evidence of fair market value. In *Little Egg Harbor Township v. Bonsangue,* the Appellate Division of the New Jersey Superior Court, held that "unlike an offer and option, contracts for the purchase of land are binding obligations, not lightly ignored. The fact that the contracts have not progressed into sales goes to the weight of the evidence rather than to its sufficiency." *Little Egg Harbor Township v. Bonsangue,* 316 N.J.Super. 271, 281, 720 A.2d 369 (1998). The Court concluded that "[t]he fact that a contract is unconsummated does not ipso facto render the contract inadmissible to establish a property's fair market value." *Id.*

■ In this case, Carl Mason signed a binding agreement to lease and to purchase the Property. This agreement does provide relevant evidence [2] helpful to the trier of fact in assessing the market value of the Property. The Defendants argue that other evidence that they will present at trial suggests that Carl Mason agreed to an inflated sales price because he did not ever intend to fulfill his obligations under the sales agreement. *See* Motion to Preclude Evidence of the Market Value of the Property at 3. Contradictory evidence, however, is not a sufficient basis upon which to preclude the testimony of an expert witness. The Defendants may challenge the accuracy and reliability of Dr. Tinari's conclusions with such contradictory evidence, however, the existence of contrary evidence does not compel preclusion of Dr. Tinari's testimony. Accordingly, I will deny the Defendants' motion *in limine* to preclude all evidence of the alleged market value of the Property.

**5. Motion to Preclude All Evidence of Alleged Damages Resulting from Any Alleged Lost Opportunities to Sell the Property**

The Fox & Lazo Defendants, joined by the Remcor Defendants, have filed a motion *in limine* to preclude any evidence of alleged damages resulting from any alleged lost opportunity to sell the Property. *See* Memorandum of Law in Support of Motion *in Limine* of Defendants, Fox and Lazo, Inc. and Cathie Galanti, to Preclude Any Evidence of Alleged Damages Resulting from Any Alleged Lost Opportunity to Sell the Property, dated Oct. 20, 1998; Motion of Defendants Remcor, Inc., M.J. Caparrelli and Estate of Wilbur S. Ganary to Join and/or Adopt the Motion *in Limine* to Preclude Any Evidence of Alleged Physical Damages Resulting From Any Alleged Lost Opportunity to Sell the Property, Filed by Defendants Fox & Lazo, Inc. and Cathie Galanti, dated Oct. 29, 1998. Specifically, the Defendants argue that the Lentzes cannot claim that they lost any opportunities to sell the Property unless they present evidence that they had such opportunities that could have been lost.

■ The Lentzes, however, allegedly did not attempt to procure offers or potential buyers, because the expert that they had hired to assess the alleged environmental contamination advised the Lentzes not to sell the house. I find that a reasonable jury could conclude that the Lentzes acted reasonably in following the advice of their expert and, therefore, the jury could determine that the absence of any potential buyers is itself a result of the alleged contamination. Accordingly, I will deny the Defendants' motion *in limine* to preclude all evidence of a foregone opportunity to sell the Property.

**6. Motion to Preclude Certain Testimony from the Lentzes' Expert Witness, Andrew Havics**

The Remcor Defendants have filed a motion *in limine* to preclude certain testimony

---

**2.** Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

744

from the Lentzes' expert witness Andrew Havics, which is almost identical to the one submitted by Defendant, United States of America, prior to its dismissal from this case. *See* Remcor, Inc., M.J. Caparrelli and Estate of Wilbur S. Ganary's Motion *in Limine* to Preclude Certain Testimony from Plaintiffs Witness Andrew Havics, dated Oct. 29, 1998; Opinion and Order, filed Oct. 28, 1998 (dismissing the United States of America as a party in this case). The Fox & Lazo Defendants filed a "motion to join in and adopt the Defendant United States of America's motion *in limine* to preclude certain testimony from Plaintiff[s'] witness Andrew Havics." Motion of Defendants, Fox & Lazo, Inc., and Cathie Galanti, to Join the Motion *in Limine* of Defendant United States of America, to Preclude Certain Testimony From Plaintiff[s'] Witness Andrew Havics, dated Oct. 21, 1998. Both the motion submitted by the Remcor Defendants and the one adopted by the Fox & Lazo Defendants offer three reasons for which this Court should exclude most, if not all, of the testimony of Andrew Havics, who is the Lentzes' expert witness on the issue of the hazardousness of the torpedo tube end cuts. In particular, the Defendants argue that Havics: (1) did not propose a remediation plan and, therefore, has no knowledge of the cost of remediation; (2) failed to take his own samples of the end cuts, relying, instead, on the ones sent to him by Robert Lentz; and (3) did not test to see if epichlorohydrine, a carcinogenic chemical, was present in the end cuts or "at the residence (in air, water, or on surfaces)." United States of America's Memorandum of Law in Support of its Motion *in Limine* to Preclude Certain Testimony from Plaintiffs' Witness Andrew Havics ("Motion to Preclude Havics's Testimony"), filed Oct. 9, 1998, at 6, 7, 9. The Lentzes have not opposed this motion, however, given the critical role that Havics's testimony plays in the Lentzes' ability to prove their case, justice compels me to consider the merits of the motion.

■ With respect to the first basis upon which the Defendants urge me to exclude part of Havics's testimony, I have reviewed Havics's report and I conclude that he did not consider the steps necessary to clean up the contamination allegedly present at the Property. *See* Evaluation of the Environmental Conditions at the Robert Lentz Property, Expert Report by Andrew A. Havics ("Havics Report"), dated Nov. 17, 1997. More strikingly, Havics conceded that he did not "actually think of a remediation plan." Havics Dep. Tr. at 196. Because Havics did not include any remediation plan in his report, I find that he has no reasoned basis upon which to assess the costs of remediation. Accordingly, I will grant the Defendants' motion *in limine* in this respect and preclude any testimony from Havics relating to "clean-up" costs.

The second reason advanced by Defendants to exclude part of Havics's testimony is that Havics did not take his own sample of the end cuts and, instead, relied upon the sample sent to him by Robert Lentz. They contend that, as a result of this failure, Havics has "no reliable foundation for the proposition that the [sample he tested] was in fact a torpedo tube piece taken from Plaintiffs' garage." Motion to Preclude Havics's Testimony at 9. The Defendants claim that without this foundation, I must preclude Havics's testimony connecting the fiberglass remnants he found in air samples at the Property with the fiberglass he collected from scrapings of the sample he tested. *See id.*

■ Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). "[O]nce the court finds that evidence has been introduced sufficient to permit a reasonable juror to find that the matter in question is what its proponent claims, a sufficient foundation for introduction in evidence has been laid." *United States v. Reilly,* 33 F.3d 1396, 1405 (3d Cir. 1994) (citing Fed.R.Evid. 104(b)). In other words, "there need only be a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court." *United States v. McGlory,*

968 F.2d 309, 328–29 (3d Cir.1992) (quoting *Link v. Mercedes–Benz of N. Am.*, 788 F.2d 918, 928 (3d Cir.1986) (quoting *United States v. Goichman*, 547 F.2d 778, 784 (3d Cir. 1976))). "The threshold determination which this court must make, therefore, is one of 'conditional relevance under [Fed.R.Evid.] 104(b)—subject to the jury's ultimate determination of genuineness.'" *Hulmes v. Honda Motor Co.*, 936 F.Supp. 195, 206 (D.N.J. 1996) (Orlofsky, J.).

■ Havics testified in his deposition that he concluded that the sample of the torpedo tube he tested was from the Property "[b]ased off [sic] of the chain of custody, Mr. Lentz's description of the material, my looking at the material, actually looking at what was there at the residence, and not seeing another reliable source of one of those tubes to grab a sample from." Havics Dep. Tr. at 158. Further, in his report, Havics stated that the sample "tube was collected by Mr. Robert Lentz from the garage, packaged and shipped and [sic] to me." Havics Report at 2–3. The Lentzes will have the opportunity at trial to present the testimony of Robert Lentz to confirm that Lentz sent Havics a sample of the tube pieces from the Property. Finally, common sense suggests that most people do not have access to torpedo tube pieces and, therefore, Robert Lentz would likely have had no other source of torpedo tube pieces to send to Havics except those found on the Property. Moreover, the Defendants will have the opportunity to cross-examine Robert Lentz about this issue. Based on this evidence and on common sense, I find that "a sufficient foundation for [the] introduction [of Havics's testimony] has been laid." *See Reilly*, 33 F.3d at 1405. "[T]he evidence [now] goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court." *See McGlory*, 968 F.2d at 328–29. Accordingly, I will deny the motion to preclude Havics's testimony regarding fiberglass remnants.

As their third basis for the preclusion of certain testimony from Havics, the Defendants argue that Havics failed to test for epichlorohydrin in the end cut sample he evaluated and at the Property. *See* Motion to Preclude Havics's Testimony at 7. Based on this failure, the Defendants contend that Havics's conclusion "rests upon a series of untested hypothesis [sic]," which undermine the reliability of his testimony regarding the release of epichlorohydrin at the Property. *Id.* at 7–8.

■ Federal Rule of Evidence 702 permits the testimony of an expert "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires "that the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This reliability requirement entails that "[p]roposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Id.* at 590, 113 S.Ct. 2786. This standard is not an exacting one. Rather, "Rule 702 merely requires the trial court to make a preliminary finding that the proffered expert testimony is both relevant and reliable while taking into account 'the inquiry envisioned by Rule 702 is … a flexible one.'" *Compton v. Subaru of Am.*, 82 F.3d 1513, 1519 (10th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996); *see also Poust v. Huntleigh Healthcare*, 998 F.Supp. 478, 493 (D.N.J.1998) (Cooper, J.) (quoting *Compton*).

Havics reached his conclusion that the end cut sample contained epichlorohydrin "[b]ased on a review of the material safety data sheets (MSDS)" that the United States Government provided for these torpedo tubes. *See* Havics Report at 4. Havics also "conducted [tests] on the tubes [to] confirm[ ] the data presented in the MSDS." *Id.* Havics relied on his expert knowledge to conclude that "the curing of the epoxy resin will not completely eliminate the presence of [epichlorohydrin, which is a] hazardous substance." *Id.* at 5. Havics also concluded that "[t]he reactive nature" of this chemical will create "a continued threat of release." *Id.*

■ While it might have been more prudent of Havics to test scrapings from the

tubes and the air, water, and surfaces at the Property for epichlorohydrin, rather than solely relying on Government information and his experience and expertise, Havics appears to have based his conclusion on "good grounds" sufficient to pass the *Daubert* standard. For his testimony to be reliable, and, thus, admissible under *Daubert*, Havics need not have used the best method available, only a reasonable one. Moreover, the Defendants are free to challenge Havics's methodology on cross-examination and in their closing arguments. Accordingly, I will deny the Defendants' motion *in limine* to preclude the testimony of Havics regarding epichlorohydrin contamination.

### 7. Motion to Preclude Evidence of the Lentzes' Claim for Future Repair Costs to the Property

The Fox & Lazo Defendants, joined by the Remcor Defendants, have also filed a motion *in limine* to preclude "Plaintiffs and/or their experts from introducing any evidence relating to alleged future costs or expenses for future remediation of the property." Motion *in Limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, to Preclude Any Claim for Alleged Costs or Expenses for Future Remediation and/or Repair of the Property ("Motion to Preclude Evidence of Future Costs"), dated Nov. 5, 1998, at 1; Remcor, Inc. M.J. Caparrelli and Estate of Wilbur S. Ganary's Motion to Join the Motion *in Limine* to Preclude Any Claim for Alleged Costs of Expenses of Future Remediation and/or Repair to the Property Filed by Defendants Fox & Lazo, Inc., and Cathie Galanti, dated Nov. 10, 1998, at 1–2. In this motion, the Defendants note that "on or about October 23, 1997, a judgment in foreclosure was entered on the property due to Plaintiffs' ongoing failure to pay their mortgage." Motion to Preclude Evidence of Future Costs at 2; *see also* Final Judgment of Foreclosure, in *Cornerstone Financial Corp. v. Lentz*, Civil Action No. F–12555–95, Superior Court of New Jersey, Chancery Division, Gloucester County, dated Oct. 23, 1997. The Defendants argue that since the Lentzes no longer own the Property, they "are under no further obligation to repair." Motion to Preclude Evidence of Future Costs at 3.

In response, the Lentzes contend that Cornerstone Financial Corp., the foreclosing mortgagee, "has the right to seek relief in a separate action in a court of competent jurisdiction." Plaintiffs' Second Memorandum of Law in Opposition to the Motions *in Limine* of Defendants, Fox & Lazo, Inc. and Cathie Galanti ("Plaintiffs' Second Opposition"), dated Dec. 8, 1998, at 2. On this basis, the Lentzes argue that if Cornerstone does attempt to hold the Lentzes liable for the damage to the Property, then they will be unable to implead the Defendants as third-party defendants in that action because their claims would be precluded under the doctrine of claim preclusion. In short, the Lentzes contend that they have continued liability for the Property, for which this lawsuit is their only remedy.

The "[f]ederal law of claim preclusion" will bar any subsequent attempt to litigate a claim where "there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3)[the] subsequent suit [is] based on the same cause of action." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir.1991). Furthermore, "[w]hen a litigant expects that a court is willing to consider its legal claims, raises some of those claims, and has those claims adjudicated, it makes sense to apply normal principles of claim preclusion to hold that the litigant has waived any legal claims he or she fails to raise which have arisen from the same transaction as those claims a litigant did raise." *Guarino v. Larsen*, 11 F.3d 1151, 1160 (3d Cir.1993); *see also Hunter v. Supreme Court*, 951 F.Supp. 1161, 1176 (D.N.J.1996) (Bassler, J.). Consequently, if the Lentzes attempt to bring a third-party complaint against any of the Defendants in this case, their claims will be barred by the doctrine of claim preclusion. This case represents the Lentzes' sole opportunity to recover a judgment for any costs for which they might be held liable by Cornerstone Financial Corp. Therefore, the Lentzes must be given the opportunity to present appropriate evidence regarding the risk of future liability. Accordingly, I will deny the Defendants' motion to preclude evidence of future costs in connection with repairing the Property.

### 8. Motion to Preclude Evidence of Alleged Environmental Damages

The Fox & Lazo Defendants, joined by the Remcor Defendants, have filed a motion *in limine* to preclude the Lentzes "from introducing any evidence against Fox and Lazo and/or Galanti relating to any alleged losses which occurred subsequent to Mason's departure from the property." Motion *in Limine* to Preclude Any Evidence Against Defendants, Fox and Lazo, Inc. and Cathie Galanti, of Alleged Environmental Damages and/or Any Damages Allegedly Sustained After Defendant, Carl Mason's Departure from the Property ("Motion to Preclude Evidence of Environmental Damages"), dated Oct. 20, 1998, at 5; Motion of Defendants Remcor, Inc. M.J. Caparrelli and Estate of Wilbur S. Ganary to Join and/or Adopt the Motion *in Limine* to Preclude Any Evidence Against Defendants of Alleged Environmental Damages and/or Any Damages Allegedly Sustained After Defendant, Carl Mason's Departure From the Property, Filed by Defendants Fox & Lazo, Inc. and Cathie Galanti, dated Oct. 29, 1998. The Defendants claim that "there is no evidence which establishes that the alleged environmental contamination at the property was a foreseeable or proximate result of any alleged failure on the part of Fox and Lazo and/or Galanti to perform a credit check or monitor Mason's financial status." Motion to Preclude Evidence of Environmental Damages at 4. The Defendants argue that because the alleged damages were not a foreseeable result, "'there can be no finding of proximate cause.'" Memorandum of Law in Support of Motion *in Limine* to Preclude Any evidence Against Defendants, Fox and Lazo, Inc. and Cathie Galanti, of Alleged Environmental Damages and/or Any Damages Allegedly Sustained After Defendant, Carl Mason's Departure from the Property, dated Oct. 20, 1998, at 4 (quoting *Yun v. Ford Motor Co.,* 143 N.J. 162, 163, 669 A.2d 1378 (1996) ("When injuries resulting from negligence are not foreseeable, there can be no finding of proximate cause.")). The Defendants further contend that without the ability to prove proximate cause, the Lentzes cannot demonstrate that their environmental damages resulted from the conduct of the Fox & Lazo Defendants and, therefore, should be precluded from introducing evidence of environmental damages. *See id.* at 6–7.

The Remcor Defendants make the same contentions in their motion to join the motion *in limine* submitted by the Fox & Lazo Defendants. Consequently, the arguments presented by the Fox & Lazo Defendants have no bearing on the liability that the Lentzes allege the Remcor Defendants to possess. Accordingly, the motion will be denied with respect to the Remcor Defendants.

For their part, the Fox & Lazo Defendants have filed what is essentially a dispositive motion "disguised" as a motion *in limine*. The Fox & Lazo Defendants seek the dismissal of the Lentzes' negligence claim on the ground that the damages were not a foreseeable result of the alleged breach. This motion *in limine*, therefore, must be considered as a dispositive motion.

■ "The deadline for filing with the clerk of the court the complete briefing packet on dispositive motions [was] August 3, 1998." Amended Final Scheduling Order, filed June 11, 1998. The present motion was filed on October 20, 1998, over two months past the deadline for the filing of dispositive motions. In *Chiropractic Alliance v. Parisi,* 164 F.R.D. 618 (D.N.J.1996), Judge Brotman held that any dispositive motion filed beyond the deadline set forth in the Scheduling Order should be dismissed. Indeed, Judge Brotman cautioned that parties should not use "motions *in limine* as an attempt to avoid the deadlines imposed by a scheduling order." *Id.* at 622, n. 6. Accordingly, this motion will be denied without prejudice to the right of the Fox & Lazo Defendants to raise this issue as part of a motion pursuant to Rule 50 of the Federal Rules of Civil Procedure at the conclusion of the Lentzes' case-in-chief.

### B. Motions *in Limine* Filed by the Fox & Lazo Defendants Alone

### 1. Motion to Preclude Evidence of Damages from the Alleged Failure of the Fox & Lazo Defendants to Perform a Credit Check of Carl Mason

The Fox & Lazo Defendants have submitted another motion *in limine*, almost identi-

cal to the previous motion, in which they seek to preclude evidence of damages based on their contention that the Lentzes have provided no evidence that Mason had bad credit, or became a credit risk after taking possession of the Property. The Fox & Lazo Defendants contend that the Lentzes cannot show that even if the Fox & Lazo Defendants had performed a credit check, or if they had monitored Mason's financial status after he obtained possession of the Property, the Lentzes would have acquired any information that would have led them to act differently. Fox & Lazo argues that this inability to prove proximate cause requires the exclusion of the Lentzes' evidence of damages allegedly resulting from the failure to perform a credit check, or to monitor Mason's financial status.

The Lentzes, in response to this motion, do not claim that there is evidence that they will present at trial that suggests that Mason had bad credit, or a poor financial status. *See* Plaintiffs' First Opposition at 13–14. Instead, the Lentzes argue that Fox & Lazo's assertions that the Lentzes must prove proximate cause "is just a red herring to avoid consideration of the failure to perform the credit check." *Id.* at 13.

 Under New Jersey law, the plaintiffs have the burden to prove that the defendants' conduct proximately caused the plaintiffs' damages or injury. *See Thorn v. Travel Care, Inc.,* 296 N.J.Super. 341, 346, 686 A.2d 1234 (1997) ("It is fundamental that in order to impose tort liability upon a defendant, a plaintiff must prove the defendant's wrongful conduct, injury and proximate cause."). Here, the Lentzes cannot meet this burden with respect to the Fox & Lazo Defendants' failure to perform a credit check or monitor Mason's financial status, because the Lentzes have provided no evidence that Mason had bad credit or a poor financial status.

The failure of the Fox & Lazo Defendants to perform a credit check or monitor Mason's financial status only has relevance to the issue of negligence to the extent that the Lentzes have the ability to prove at trial that this failure at least partially caused their damages. It is the obligation of the Court to "examine[ ] all the evidence in the case and decide[ ] whether the jury could reasonably find the conditional fact—here, that [Mason might have had bad credit or a poor financial condition]—by a preponderance of the evidence." *See Huddleston v. United States,* 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Because the Lentzes will not present any evidence at trial to suggest that Mason had bad credit or a poor financial condition, I conclude that no reasonable jury could so find. Accordingly, I will grant the Fox & Lazo Defendants' motion with respect to the exclusion of evidence of their failure to perform a credit check or monitor Mason's financial status.

I am not, however, granting all the relief sought by the Fox & Lazo Defendants because I will only exclude evidence pertaining to the failure of the Fox & Lazo Defendants to perform a credit check or to monitor Mason's financial condition. The Fox & Lazo Defendants, however, seek the exclusion of *all* evidence of damages that resulted from the failure to perform a credit check. The Lentzes, however, have alleged various forms of negligence on the part of the Fox & Lazo Defendants that may have caused, at least in part, damage to the Property. *See* JFPO at 11. For example, the Lentzes claim that the Fox & Lazo Defendants failed to fulfill their "obligation ... to produce a ready, willing and able buyer." *Id.* The Lentzes shall be permitted to present evidence of damages to the Property that may have resulted from other negligent conduct or breach of contractual duties allegedly committed by the Fox & Lazo Defendants.

### 2. Motion to Exclude Evidence of the October 18, 1993, and October 23, 1998, Listing Agreements

The Fox & Lazo Defendants have filed a motion *in limine* to preclude the Lentzes "and/or their experts from introducing or relying upon the alleged 10/18/93 and 10/23/93 Listing Agreements at trial." Motion *in Limine* of Defendants Fox and Lazo, Inc. and Cathie Galanti, to Preclude Plaintiffs and/or their Experts from Introducing and/or Relying Upon the Alleged 10/18/93 and 10/23/93 Listing Agreements at Trial, dated Oct. 20, 1998, at 1. The Fox & Lazo Defen-

dants make this argument on the ground that "[t]he 11/23/92 Agreement has an integration clause which" supercedes all previous agreements. *Id.* at 2. Fox & Lazo contends that, as a result, "the integration clause and the parol[ ] evidence rule operate to preclude Plaintiffs from introducing the purported 10/18/93 and 10/23/93 Listing Agreements at trial." *Id.*

■ "The parol evidence rule may be explained generally as follows:"

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 251 N.J.Super. 570, 573, 598 A.2d 1234 (1991). Thus, the parol evidence rule precludes evidence of the October Listing Agreements only to the extent that the Lentzes seek to use these prior agreements "for the purpose of varying or contradicting" the November Listing Agreement. *See id.* The parol evidence rule would not prevent the Lentzes from introducing the prior agreements as evidence, for example, that Cathie Galanti "agreed to list the Home for lease" in October, 1993. *See* Plaintiffs' First Opposition at 15. Because I cannot know before trial the purpose for which the Lentzes will seek to use these prior agreements, I cannot rule on this motion at this time. Accordingly, I will deny the Fox & Lazo Defendants' motion to preclude the 10/18/93 and 10/23/92 Listing Agreements without prejudice to their right to raise this issue again should the Lentzes attempt to use either October Agreement for a purpose prohibited by the parol evidence rule.

### III. Conclusion

For the reasons set forth above, I will grant all three motions to amend. I will also grant the Defendants' motion *in limine* to preclude the testimony of Andrew Havics with respect to the costs of remediation, the Defendants' motion *in limine* to preclude evidence of alleged physical injury with respect to evidence that Robert Lentz suffered a detached retina, and the Fox & Lazo Defendants' motion *in limine* to preclude evidence regarding the failure of the Fox & Lazo Defendants to perform a credit check or to monitor Mason's financial status. I will deny all other motions *in limine*. I will enter an appropriate order.

### ORDER

This matter having come before the Court on the ten motions *in limine* of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, and of Defendants, Fox and Lazo, Inc., and Cathie Galanti, and on the three motions to amend the JFPO, one from each of the parties, Michael G. Brennan, Esq., of Brennan & Bernardin, and John J. Dugan, Esq., of Kozlov, Seaton, Romanini, Brooks & Greenberg, appearing on behalf of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, Jeffrey T. Kampf, Esq., of Jay & Kampf, appearing on behalf of the Plaintiffs, Robert and Mary Lentz, Thomas P. Bracaglia, Esq., and Frank S. Nofer, Esq., of Kelly, McLaughlin & Foster, appearing on behalf of Defendants, Cathie Galanti and Fox & Lazo, Inc.; and,

The Court having considered the submissions of the parties, and for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 11th day of January, 1999, hereby ORDERED that:

1. The motion of Defendants, Fox and Lazo, Inc., and Cathie Galanti, to amend the Joint Final Pretrial Order is GRANTED;

2. The motion of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, to amend the Joint Final Pretrial Order is GRANTED;

3. The letter application of Plaintiffs, Robert and Mary Lentz, to amend the Joint Final Pretrial Order, dated December 24, 1998, is GRANTED;

4. The motion *in limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, and of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, to preclude evidence of alleged damages

and/or expenses incurred by the Lentzes in repairing the Property is DENIED;

5. The motion *in limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, and of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, to preclude the testimony of witnesses not timely identified by the Lentzes during discovery is DENIED;

6. The motion *in limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, and of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, to preclude evidence of any alleged physical injury suffered by Robert Lentz is GRANTED with respect to all evidence that Robert Lentz suffered from a detached retina and had surgery to correct this problem, and DENIED with respect to any asthma attack that Robert Lentz may have suffered;

7. The motion *in limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, and of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, to preclude evidence of the alleged market value of the Property is DENIED;

8. The motion *in limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, and of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, to preclude all evidence of alleged damages resulting from any alleged lost opportunities to sell the Property is DENIED;

9. The motion *in limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, and of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, to preclude certain testimony from the Plaintiffs' expert witness, Andrew Havics, is GRANTED with respect to Havics's testimony about the cost of remediation and DENIED in all other respects;

10. The motion *in limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, and of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, to preclude evidence of the Plaintiffs' claim for future repair costs is DENIED;

11. The motion *in limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, and of Defendants, Remcor, Inc., M.J. Caparelli, and the Estate of Wilbur S. Ganary, to preclude evidence of alleged environmental damages is DENIED;

12. The motion *in limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, to preclude evidence of damages resulting from the alleged failure of Defendants, Fox and Lazo, Inc., and Cathie Galanti, to perform a credit check of Carl Mason or to monitor his financial status is GRANTED with respect to evidence relating to such failure to perform a credit check or to monitor Carl Mason's financial status, and DENIED in all other respects; and,

13. The motion *in limine* of Defendants, Fox and Lazo, Inc., and Cathie Galanti, to preclude evidence of the October 18, 1993, and the October 23, 1998 Listing Agreements is DENIED.

## OPINION ON MOTION FOR RECONSIDERATION

Plaintiffs, Robert and Mary Lentz ("the Lentzes"), have moved this Court to reconsider its Opinion and Order, filed yesterday, January 11, 1999, which granted in part the motion *in limine* of Defendants, Fox & Lazo, Inc., and Cathie Galanti (collectively, "Fox & Lazo"), to exclude all evidence of the alleged failure of Fox & Lazo to check Carl Mason's credit history. In my January 11, 1999, Opinion, I concluded that:

> The failure of the Fox & Lazo Defendants to perform a credit check or monitor Mason's financial status only has relevance to the issue of negligence to the extent that the Lentzes have the ability to prove at trial that this failure at least partially caused their damages. It is the obligation of the Court to "examine[ ] all the evidence in the case and decide[ ] whether the jury could reasonably find the conditional fact— here, that [Mason might have had bad credit or a poor financial condition]—by a preponderance of the evidence." *See Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Be-

cause the Lentzes will not present any evidence at trial to suggest that Mason had bad credit or a poor financial condition, I conclude that no reasonable jury could so find. Accordingly, I will grant the Fox & Lazo Defendants' motion with respect to the exclusion of evidence of their failure to perform a credit check or monitor Mason's financial status.

Slip Opinion, filed January 11, 1999, at 36. The Lentzes now advance two theories upon which they argue that this decision should be reconsidered: first, this Court did not consider newly discovered evidence, namely, the recently discovered testimony of Rosemarie McLeod that Carl Mason had a bad credit history, evidence which Plaintiffs' counsel contends he only discovered within the past week, and, second, the Court failed to recognize that the Lentzes need not prove that Mason had bad credit to succeed on their negligence and breach of contract claims.

■■■■ A motion for reconsideration must present "matters or controlling decisions which counsel believes the Judge ... has overlooked." *See* Local Civ. R. 7.1(g). "The word 'overlooked' is the operative term in the Rule." *Chicosky v. Presbyterian Medical Center*, 979 F.Supp. 316, 318 (D.N.J.1997) (Orlofsky, J.). "Only dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." *Resorts International, Inc. v. Greate Bay Hotel and Casino, Inc.*, 830 F.Supp. 826, 831 (D.N.J.1992) (Gerry, C.J.). "[S]uch motions are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers." *Rouse v. Plantier*, 997 F.Supp. 575, 579 (D.N.J.1998) (Orlofsky, J.).

■■■■ Further, "[m]ere disagreement with a decision of the district court should normally be raised through the appellate process and is inappropriate on a motion for reargument." *Id.* at 578 (citing *Bermingham v. Sony Corp.*, 820 F.Supp. 834, 859 n. 8 (D.N.J.1992), *aff'd*, 37 F.3d 1485 (3d Cir.1994) and *Florham Park Chevron v. Chevron, U.S.A.*, 680 F.Supp. 159, 163 (D.N.J.1988)); *see also G–69 v. Degnan*, 748 F.Supp. 274, 275 (D.N.J.1990) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'") (quoting *Carteret Savings Bank v. Shushan*, 721 F.Supp. 705, 709 (D.N.J.1989)). Only where matters were overlooked, which, if considered by the Court, might reasonably have resulted in a different conclusion, will the Court entertain such a motion. *See Panna v. Firstrust Savings Bank*, 760 F.Supp. 432, 435 (D.N.J.1991).

■■■■ In their opposition to Fox & Lazo's motion *in limine*, the Lentzes admit that "Carl Mason's credit history has not been adduced." Plaintiffs' First Memorandum of Law in Opposition to the Motions *in Limine* of Defendants Fox & Lazo, Inc. and Cathie Galanti ("Plaintiffs' Opposition"), filed Nov. 17, 1998, at 14. The Lentzes now claim that they first discovered on Thursday, January 7, 1999, that Rosemarie McLeod had conducted a credit check for Mason and could testify that Mason had bad credit. The Lentzes, however, do not provide any reason for their failure to discover this information earlier and to include it in their memorandum in opposition to Fox & Lazo's motion *in limine*. Without any explanation for the Lentzes' failure to exercise due diligence, this "court will not, at this late date, consider evidence which could and should have been submitted earlier. This court has previously held that '[w]e are in fact bound not to consider such new materials, lest the strictures of our reconsideration rule erode entirely.'" *Damiano v. Sony Music Entertainment, Inc.*, 975 F.Supp. 623, 635 (D.N.J.1996) (Simandle, J.) (quoting *Resorts International*, 830 F.Supp. at 831). The issue of Mason's alleged history of bad credit and Fox & Lazo's alleged failure to conduct a credit check has been well known to the parties and the Court for some time. *See, e.g., Lentz v. Mason*, 961 F.Supp. 709, 719 (D.N.J.1997) (Orlofsky, J.) (observing that "Plaintiffs assert that a credit check ... would have revealed problems which should have led Fox & Lazo to prevent Mason from taking up residence at the Property.").

To avoid this conclusion, the Lentzes claim that manifest injustice will result if all evidence relating to Fox & Lazo's failure to check Mason's credit history is excluded. While "[t]here is no definition of 'manifest injustice,'" *Reed v. Binder,* 165 F.R.D. 424, 426 (D.N.J.1996) (Kugler, M.J.), most courts balance "the possible hardships imposed on the respective parties." *Gorlikowski v. Tolbert,* 52 F.3d 1439, 1444 (7th Cir.1995). Nonetheless, the Lentzes cannot claim that manifest injustice will result when they have "offered no compelling reason why" they did not discover this new evidence earlier. *See Petree v. Victor Fluid Power, Inc.,* 831 F.2d 1191, 1194 (3d Cir.1987).

Additionally, I find that Fox & Lazo will suffer from surprise and undue prejudice if I permit the Lentzes to introduce this new evidence, because Fox & Lazo only learned of its existence at the "eleventh hour," specifically, the first day of trial. *See id.* Thus, I find that exclusion of all evidence relating to Fox & Lazo's failure to perform a credit check will not result in manifest injustice.

The Lentzes argue, in the alternative, that this proffered testimony from McLeod is not new, but is described in the Joint Final Pretrial Order. The Joint Final Pretrial Order provides that McLeod "will testify regarding defaulted defendant Carl Mason's prior conduct with regard to the lease and purchase of a home." Joint Final Pretrial Order, filed Sept. 16, 1998, at 27. This one sentence does not reveal that McLeod will testify about Mason's prior bad credit history, nor does it reflect that McLeod will testify about what steps she may have taken in relation to Mason's lease and purchase of a home. Quite simply, this sentence does not provide Fox & Lazo, or the Court, for that matter, with any notice that the Lentzes planned to introduce testimony about Mason's credit history. Furthermore, the Lentzes' unambiguous admission that "Carl Mason's credit history has not been adduced," made in response to Fox & Lazo's motion *in limine,* Plaintiffs' Opposition at 14, provided Fox & Lazo and this Court with unambiguous notice that the Lentzes did not intend to introduce such testimony at trial. Accordingly, I will deny the Lentzes' motion for reconsideration of my January 11, 1999, Opinion and Order, with respect to their contention that they be permitted to introduce testimony demonstrating that Mason had a prior history of bad credit.

As the second basis for their motion for reconsideration, the Lentzes argue that they do not need to prove that Mason had a poor credit history, because as the owners of the property, they should have had the right to decide whether to accept Mason as a tenant based on all available information and Fox and Lazo's failure to provide such information denied them this right. This argument, however, fails to present "matters or controlling decisions which ... the Judge ... has overlooked." *See* Local Civ. R. 7.1(g). The Lentzes, simply, have failed to "show more than a disagreement with the Court's decision." *See G–69,* 748 F.Supp. at 275.

Even upon consideration of the merits of this motion for reconsideration, the Lentzes' argument is still unpersuasive. They claim that they had a right to receive and evaluate all information about Mason's credit history, however, they still have the burden to prove that their inability to consider this information caused their damages, under either a breach of contract or a negligence theory. In other words, the Lentzes must be able to present some evidence that the results of a credit check would have provided information that would have led them to reject Mason as a tenant. From the evidentiary record currently before the Court, there is no evidence that Mason had anything other than a perfectly stellar credit history. Accordingly, I will deny the Lentzes' motion for reconsideration.